## SMITH et al. v. FEATHER et al.
### No. 12172.

Court of Civil Appeals of Texas. Galveston.
March 23, 1950.

Rehearing Denied April 27, 1950.

418

A. C. Winborn, Criminal District Attorney, W. K. Richardson, Ass't Criminal District Attorney, Knipp & Broady and Ernest A. Knipp, all of Houston, for appellant.

J. P. Markham, Jr., of Houston, for appellee.

Will Sears, City Attorney, and J. L. Wroe, Ass't City Attorney, Houston, Attorneys for amici curiae, City of Houston.

Trueman O'Quinn, City Atty., and Robert L. Burns, Asst. City Atty., of Austin, amicus curiae, for League of Texas, Municipalities and Texas City Attorneys Ass'n.

CODY, Justice.

This was a suit by the fee-simple owners of a tract of land 83⅓ feet by 150 feet, in the City of Houston, to enjoin the Tax Assessor and Collector and the members of the Commissioners Court of Harris County from taxing said property for 1947 and subsequent years, on the ground that said property was owned and used exclusively for school purposes.

Trying the case without a jury, the court enjoined the defendants from carrying a portion of the property on the State and County tax rolls, which the court found was owned and used exclusively for school purposes, but declined to enjoin taxation of the portion which the court found was used partly for school purposes and partly for the residence of plaintiffs. In compliance with defendants' request, the court filed conclusions of fact and law which, so far as we deem necessary to give, found:

That plaintiffs conducted a public college, academy or school on the premises described in their petition. That admission requirements thereto were a high school education. That instruction was given in regularly scheduled classes in Interior Architecture and Decoration; Fashion Costume Design; Commercial Art; and Display and Merchandising, which in three years led to a diploma. That the school was approved by the United States Veterans Administration for "G. I." students, and by the State, which paid the tuition of some of the students.

That the school was conducted by a partnership, consisting of plaintiffs and their daughter, under the name of Feather and Feather School of Design, and sometimes under the name of Feather and Feather. That the partnership employed seven instructors in addition to plaintiff Mrs. Feather, and plaintiffs' daughter; and plaintiff H. O. Feather was registrar and business manager. That each partner had a drawing account, and they divided the profits equally. That the school is conducted for profit; and the partnership files an annual income tax return under the internal revenue laws.

That the partners reside in a building, which is on a portion of the land which is 45 feet by 55 feet, as an incident to conducting the school, which said building is also used for school purposes. That the other building, which is on the other portion of the land, is used exclusively for school purposes. That "The property is used as one unit, as a dwelling for the members of the family who constitute the partnership, and for business as well, the two uses being so intermingled they cannot be separated for practical purposes." While not embraced in the court's findings of fact, which omission was not objected to by appellants, it seems to be undisputed that plaintiffs sold equipment and supplies to the students. This activity seems to have been engaged in by plaintiffs more to meet the requirements of the Veterans Administration than for any thing else, and if any profits were realized, the same were negligible.

The court's conclusions of law were (1) the part of the property used exclusively for school purposes is exempt from ad valorem taxes; and (2), the portion of the

property used partly for school purposes and partly as a dwelling place is not exempt.

The single point on which appellants predicate their appeal is "The trial court erred in cancelling the State and County tax assessments for 1947, 1948, and 1949 on property of the plaintiffs, unrendered for those years, consisting of 83⅓ feet by 150 feet of land and improvements thereon at the corner of Montrose and Branard Streets in the City of Houston on the ground that an unsegregated portion of the assessment was exempt from taxation as being owned and used exclusively for school purposes."

Before discussing the point, we should acknowledge the aid derived from able briefs filed by amici curiae.

Colleges or universities were originally established by the Church as nurseries for recruiting its clergy. Our religion is, of course, rooted in its sacred books, and requires a literate and learned clergy. Attendance by the laity on these institutions of learning was encouraged. As is well known, in time the number of the lay students greatly exceeded the clerical. From the beginning, a chief end of education was the formation of character, as well as the improvement of the mind. During the ages while sovereignty was yet divided in every community between the secular power and the Church, somewhat as in our system between the states and federal government, the tradition became firmly fixed that Church property (which included the colleges) was not to be taxed by the secular power. For present purposes, it is enough to say that under our system the people, by a duly adopted Constitution, set up and give law to the secular power. We are not now concerned with how the tradition became established that the secular power should not tax public property, used for public purposes. It is enough to say that, in adopting the provisions of the Constitution with respect to taxation, the tradition that public property used for public purposes, and Church property, should not be taxed was preserved in Section 2, Article VIII of the State Constitution, Vernon's Ann.St., to the extent that the Legislature, the peoples' representatives, were authorized by general laws to exempt:

(a) Public property, used exclusively for public purposes.

(b) Actual places of religious worship.

(c) Places of burial, not held for profit.

(d) All buildings used exclusively and owned by persons and associations of persons for school purposes and the necessary furniture of schools, and the endowment funds of such institutions of learning and religion and not used with a view to profit, etc.

(e) Institutions of purely public charity.

Said section concludes " * * * and all laws exempting property from taxation other than the property above mentioned shall be null and void."

What is now Article 7150, Vernon's Ann. Civ.St., was enacted pursuant to the aforesaid section of the Constitution. Section 1 of said Article 7150 relates to exempting "Schools and Churches", and reads in part: " * * * All public colleges, public academies, and all endowment funds of institutions of learning and religion not used with a view to profit, * * * and all such buildings used exclusively and owned by persons * * * for school purposes * * *."

The quoted language evidences no intention to exempt from taxation institutions such as dancing or fencing schools, or riding academies. This, not because such schools are ordinarily conducted with a view to profit, but because any connection between improvement of the mind or character and the attendance on such schools is too remote and speculative. However, the field of education is an ever-expanding one as to the subjects taught; particularly, in graduate and professional fields. And while the tuition which a student can pay is in many instances wholly insufficient to bear the expense of instructing him in certain subjects, in others, notably the law, the tuition paid by students make of a well-

attended law school a profitable project. So, the Legislature, acting with the traditional view of the ends of education, made no attempt to restrict the exemption of taxation to schools which were not conducted with a view to profit. It is not necessary that a college also be a public charity, in order to enjoy exemption from taxation. Both the Constitution and statute exempted from taxation buildings which are owned and used exclusively for school purposes, using that as the sole test. Under our system no one wishes the State to obtain a monopoly of education.

 It is well settled that exemptions from taxation are regarded "not only as in derogation of sovereign authority, but of *common right* as well." Jones v. Williams, 121 Tex. 94, 98, 45 S.W.2d 130, 131, 79 A.L.R. 983. But even though any reasonable doubt as to whether it was intended to exempt property from taxation must be resolved in favor of taxation, words will be given their ordinary meaning, and excepted legal conceptions will be applied. So the word "building" as used in the Constitution and Statute in "buildings used exclusively and owned by persons or associations of persons for school purposes" is construed to embrace the lot to which the building is affixed. Cassiano v. Ursuline Academy, 64 Tex. 673, 675; St. Edwards' College v. Morris, 82 Tex. 1, 3, 17 S.W. 512.

 However, it is settled that a building, which is owned to conduct a school in, and which is also used as a dwelling by the owner, is not owned and used exclusively for school purposes, and is not exempt. Red v. Johnson, 53 Tex. 284. But where the owners of a building conduct a boarding school therein; and reside therein to afford protection, guidance, governance and training necessary for the pupils outside of the class room,—the building is still used exclusively for school purposes, notwithstanding the owners reside therein. See Red v. Morris, 72 Tex. 554, 10 S.W. 681; Cassiano v. Ursuline Academy, supra.

 In the present case, the students resided in neither building located on the premises, but resided where they pleased; and the inference is that, as in the case of other professional schools, the students were deemed to stand in no need of supervision of their conduct or moral training, and that the members of the partnership in no sense stood in loco parentis to the students. The evidence warranted the conclusion, if it did not compel it, that the members of the partnership dwelt in a building on the premises because it was convenient for them to do so and doubtless because it was economical. Such finding by the court certainly required the legal conclusion that the building, in which the members of the partnership dwelt, though partly used for school purposes, was not exempt from taxation, because not used exclusively for school purposes.

The court's finding that the building which was exempted from taxation was used exclusively for school purposes makes it unnecessary to consider the matter of plaintiffs' activity in furnishing the students with equipment and supplies. This, because, in support of the finding, we must presume this activity was confined to the building in which plaintiffs dwelt. That is, we must so assume if such activity is material. But the fact that plaintiffs may have engaged in this activity because it was a requirement of the Veterans Administration would have no bearing.

 It was entirely proper for the court to exempt from taxation as much of the land as the Constitution would permit the Legislature to exempt and as the Legislature had attempted to exempt. See the St. Edwards' College case, supra, at page 5 of 82 Tex., at page 513 of 17 S.W. This is true irrespective of whether there had been any formal act of segregation. Id. For purposes of exemption from taxes, the exclusive use for school purposes must be said to effect the segregation. It would be different had there been but one building, and it had not been used exclusively for school purposes.

The court's judgment is affirmed.