CARL E. SMITH ET AL *v.* HAROLD O. FEATHER ET UX.

No. A-2710. Decided November 8, 1950.
Rehearing overruled December 20, 1950.
(234 S. W., 2d Series, 418.)

*A. C. Winborn*, Criminal District Attorney, and *W. K. Richardson*, Assistant Criminal District Attorney of Harris County, and *Knipp and Broady* and *E. A. Knipp*, all of Houston, for Petitioners.

The Court of Civil Appeals erred in holding that notwithstanding the fact that the property in question was being used exclusively by the persons owning it for school purposes, it was nevertheless exempt for the years 1947, 1948, and 1949, because while the property was owned by Mr. and Mrs. Feather it was being conducted by a partnership for profit by them and their daughter, who owned no interest in the buildings, and the school conducted therein was not embraced in the language exempting property for school purposes. City of Longview v. Markham-McRee Mem. Hospital, 137 Texas 178, 152 S. W. 2d 1112; Little Theater v. City of Dallas, 124 S. W. 2d 863; Morris v. Royal Arch Masons, 68 Texas 698, 5 S. W. 519.

*J. P. Markham, Jr.*, of Houston, for respondents.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

Harold O. Feather and Virginia Feather, husband and wife, owners of a tract of land 83-1/3 feet by 150 feet in the city of Houston, brought this suit against Carl E. Smith in his capacity as Assessor and Collector of Taxes for Harris County and the members of the Commissioners' Court and Board of Equalization of Harris County to enjoin the assessing and taxing of the property for the year 1947 and subsequent years on the theory that the property was owned and used exclusively for school

purposes. There are two buildings on the property, one of which is used in part by the owners as a residence and in part for school purposes. The other building, according to the finding of the trial court, was used exclusively for school purposes. The trial court enjoined the taxing of the latter building, but denied the petition for injunction as to the other building. The Feathers prosecuted no appeal and the holding of the trial court that the building used in part as their residence was not exempt from taxation is not before us for review. The defendants in the trial court prosecuted an appeal to the Court of Civil Appeals, which court affirmed the trial court's judgment. 229 S. W. 2d 417.

The trial court filed findings of fact, the material portions of which are summarized in the opinion of the Court of Civil Appeals as follows:

"That plaintiffs conducted a public college, academy or school on the premises described in their petition. That admission requirements thereto were a high school education. That instructions was given in regularly scheduled classes in Interior Architecture and Decoration; Fashion Costume Design, Commercial Art; and Display and Merchandising, which in three years led to a diploma. That the school was approved by the United States Veterans Administration for 'G. I.' students, and by the State, which paid the tuition of some of the students.

"That the school was conducted by a partnership, consisting of plaintiffs and their daughter, under the name of Feather and Feather School of Design, and sometimes under the name of Feather and Feather. That the partnership employed seven instructors in addition to plaintiff Mrs. Feather, and plaintiffs' daughter; and plaintiff H. O. Feather was registrar and busineess manager. That each partner had a drawing account, and they divided the profits equally. That the school is conducted for profit; and the partnership files an annual income tax return under the internal revenue law."

■ The Constitution of 1876, Article VIII, Section 2, authorized the Legislature to exempt from taxation "* * * all buildings used exclusively and owned by persons or associations of persons for school purposes, * * *."

The next Legislature enacted Article 4673, Revised Statutes of 1879, granting an exemption in the exact words of the Constitution. No change was made in that language until the revision of 1925, when the word "such" was inserted, causing the exemption to read: "* * * all such buildings used exclusively

and owned by persons or associations of persons for school purposes, * * *." The word "such" was carried into the 1931 amendment of Article 7150. Considering the first constitutional provision and the statute prior to the revision of 1925 in the light of conditions existing when the Constitution was adopted and the statute enacted, it is clear that buildings used exclusively for private schools, even though operated for profit, were exempt from taxation. Cases construing the statute in that era involved private schools, some of which undoubtedly had a profit motive, and none was denied exemption on that account. St. Edwards College v. Morris, 82 Texas 1, 17 S. W. 512; Red v. Morris, 72 Texas 554, 10 S. W. 681; Cassiano v. Ursuline Academy, 64 Texas 673; Red v. Johnson, 53 Texas 284. Private schools were in greater proportion then than they are today, and the theory back of their exemption was that they were rendering a distinct public service which under our theory of government was recognized as a function of the state. The fact that incidental benefits accrued to the individuals and associations operating private schools was not regarded of sufficient weight to authorize the imposing of a tax upon the buildings. In discussing this exemption the opinion in Edmonds v. City of San Antonio, 14 Texas Civ. App. 155, 36 S. W. 495, error refused, stated that the provision "* * * can be justified alone upon the ground that it encourages education which elevates and enlightens society, and is directly for the public good." The court in that case denied the exemption where a building was used in part as a residence for an attorney and in part for school purposes, but recognized that the building would have been exempt had it been used exclusively by the owner for school purposes. The language of the exemption is hardly susceptible of any other construction. It is applicable to buildings privately owned, and the only requisite which must be met in order for a building to fall within the exemption is that it be used exclusively by its owner for school purposes. McKay's Debates in the Texas Constitutional Convention of 1875, pages 371, 372, contains an interesting history of the debate in the Constitutional Convention on the question of whether to insert this exemption in the Constitution. It is disclosed that the original draft of Section 2 permitted exemption from taxation "school houses and their necessary furniture." Motion to amend by inserting the word "public" before schools was defeated. At the conclusion of the debate a substitute to the amendment was adopted, reading "All buildings used exclusively and owned by persons for school purposes, * * *." That is practically the same language as that now in the Constitution and statute.

But it is urged that the insertion of the word "such" in the

revision of 1925 changed the exemption and limited its operation to public buildings. As noted above, the 1925 revision exempted "* * * all such buildings used exclusively and owned by persons or associations of persons for school purposes, * * *." In one of the briefs filed in this case this argument is advanced: "It is submitted that regardless of the meaning of this 'school' phrase prior to 1925, the words 'all *such* buildings' refer to buildings of public colleges and public academies, and there is now no legislative exemption of private schools." It is argued that "all *such* buildings" means "all such public college and academy buildings." What petitioners insist upon literally is a construction that would have the Legislature say that there is exempt from taxation all public buildings privately owned and privately used. If a building is privately owned and privately used it is not a public building. We decline to give the word "such" that meaning. It does not refer back to public buildings, but to college and academy buildings. If "such" does not refer to that class of buildings it has no meaning at all. The statute first exempts public college and academy buildings, and that is followed by an exemption of college and academy buildings privately owned. Our conclusion is that the exemption was not changed by the insertion of the word "such" in the 1925 revision.

As noted above, the statute was amended in 1931 in particulars. not necessary to mention here. Petitioners recognize that the language of the 1925 revision is more favorable to their contention than is the language of the amendment of 1931, and insist that the amendment is unconstitutional because of a defective caption, and that the statute should be construed as in the 1925 revision. We have not considered the question of the constitutionality of the amendment, for the reason that it is not necessary to do so. So far as the question here involved is concerned, it is our view that buildings used exclusively and owned for school purposes are exempt under the 1925 revision just as clearly as under the 1931 amendment, and it is, therefore, immaterial to a decision of the question before us whether or not the 1931 amendment is constitutional.

■ Petitioners insist that the institution operated by respondents was not a school within the purview of the Constitution and statute. That contention is answered, in our view, by referring to the findings of fact by the trial judge. The institution maintained a faculty of seven instructors, had an entrance requirement of a high school diploma or its equivalent, and the course of study covered a period of three years, at the conclusion of which certificates were awarded. It was approved by the United

States Veterans Administration and by the State of Texas, which paid the tuition for some of the students. We know of no rule or decision which requires or even would authorize a holding that this institution was not a school within the terms of the statute.

■ The next question for decision is: Was this building "used exclusively and owned by persons or associations of persons for school purposes"? It is shown that beginning in 1948 and extending through 1949 an adult daughter of the Feathers became an equal partner with her parents in the operation of this school. The partnership makes an annual partnership income tax return, and the profits of the enterprise are divided among the three of them. It is obvious that from the date of the formation of that partnership the owners of this building were not the exclusive operators of the school. In order to fall within the terms of this exemption the building must be used exclusively by persons or associations of persons who own the property. Had Mr. and Mrs. Feather rented the building to others who used it exclusively for school purposes, it would not be exempt. Red v. Morris, 72 Texas 554, 10 S. W. 681. It is equally clear that if any part of the building was used for the purpose of carrying on a business or profession by one not the owner, that would destroy the exemption. City of Longview v. Markham-McRee Memorial Hospital, 137 Texas 178, 152 S. W. 2d 1112; City of Houston v. Scottish Rite Benevolent Assn., 111 Texas 191, 230 S. W. 978; A. R. Morris v. Royal Arch Masons, 68 Texas 698, 5 S. W. 519; B. P. O. E. Lodge No. 151 v. City of Houston, 44 S. W. 2d 488, error refused. If the daughter had operated this school alone, clearly the building would not be exempt. Since in order to be exempt the building must be owned exclusively by those who use it as a school, the fact that one of the three persons who use it as a school owns no interest in it destroys the exemption. The partnership operation was for the years 1948 and 1949. The exemption must therefore be denied for those years.

The judgments of the Court of Civil Appeals and the district court are reformed so as to limit the injunction to the year 1947, and, as reformed, are affirmed.

Opinion delivered November 8, 1950.

Rehearing overruled December 20, 1950.