THE ATTORNEY GENERAL
OF TEXAS
AUSTIN, TEXAS 78711



WAGGONER CARR
ATTORNEY GENERAL

July 27, 1966

Honorable Lowell C. Holt                    Opinion No. C-731
District Attorney
Upshur County                               Re: Taxability for ad valorem
Gilmer, Texas                               tax purposes of property
                                            owned by Radio Church of
                                            God and Ambassador College,
                                            part of which is used by
Dear Mr. Holt:                              Imperial School.

        Your letter requests an opinion of this office "concern-
ing the exempt status of a portion of 1525 acres of land in
Upshur County, Texas, part of which is owned by Radio Church
of God, a part owned by Ambassador College and a part of
which is used by Imperial School, which is a school operated
by Radio Church of God." We quote further from your letter.

                "The facts concerning this property, as
                well as we can ascertain them, are as
                follows:

                        "RADIO CHURCH OF GOD

                "The Radio Church of God was originally
                chartered in California as a non profit
                Radio Church corporation on February 20,
                1947 and was granted a Certificate of
                Authority by the Secretary of State of
                Texas on the 2nd day of October, 1963.

                "The purpose or purposes which it pursues
                in the State of Texas are as follows:

                        "The nonprofit vocation of managing the
                        temporal affairs and promoting the
                        spiritual, educational and other benevo-
                        lent interest of the Church, and without
                        limitation upon the generality of the
                        foregoing, proclaiming the Gospel by
                        radio, printing, personal evangelism

                              -3512-

and other means of communication;
establishing Churches and ordaining
ministers; operating schools and
classes for the spiritual intellectual,
and physical development of its members
and affiliates; acquiring property,
real, personal or mixed, and mortgaging,
leasing, selling, exchanging or other-
wise disposing of the same, subject to
the provisions, Vernon's Annotated
Civil Statutes, Miscellaneous Corpora-
tion Laws, Article 1302-4.01 and
Article 1302-4.05; receiving inter
vivos or testamentary gifts and dona-
tions, engaging in such other secular
activities, permitted by law, as are
necessary or expedient to carry out
the foregoing.

"The Church activities are financed solely
from members and contributions from co-workers.
Never in the history of the Church have funds
been solicited in any of the Church literature,
its world-wide evangelistic and charitable pro-
grams; over its world-wide radio broadcasts nor
have any public fund raising campaigns ever been
conducted for the financing of the Church.

"Attendance at the Big Sandy Church services
range from 750 to 800 each week. Services are
held weekly for members.

"The Church and its activities are exempt from
Federal Taxation because of its religious,
charitable and non-profit nature and it should
be pointed out that the Church is strictly a
religious, educational and charitable organi-
zation. The Comptroller of Public Accounts,
Austin, Texas has also adjudged it exempt from
the Corporate Franchise Tax and Limited Sales
Tax of the State of Texas.

"Faculty members are transferred from time to
time from one campus to the other in order that
each of the colleges will maintain the same

degree of scholastic excellence. At
each college, certain members of the
faculty are required to reside on the
campus, viz: Heads of Departments, Dean
of Men and Women and other Administrative
Heads.

"Approximately 16,000 people attend the
Church worship services each fall and
spring. During the year, there will be
three (3) separate meeting days of the
Church for a one day session at which a
minimum of 1800 people will attend for
these three (3) separate meetings.

## "AMBASSADOR COLLEGE

"Ambassador College is a co-educational
liberal arts college with regular faculty,
organized on campus student body and main-
tains curriculum at the collegiate level.

"The College is exempt from Federal Taxa-
tion under Section 510 (c) 3 of the Internal
Revenue Code. The Comptroller of Public
Accounts, Austin, Texas has also adjudged
it exempt from the Corporate Franchise Tax
and Limited Sales Tax of the State of Texas.

"Ambassador College at Big Sandy is one of
three (3) Ambassador Colleges operated and
functioning as a college in the world. The
original Ambassador College at Pasadena,
California was chartered as a nonprofit
organization by the State of California on
April 8, 1951. A Certificate of Authority
was issued to Ambassador College to operate
as a nonprofit corporation in the State of
Texas on the 9th day of September, 1963.
The purpose of Ambassador College as certi-
fied to conduct its activities in the State
of Texas are as follows:

"Those necessary for the establishment,
maintenance and conduct of an educational

institution of regular curriculum to instruct and train students for successful lives and for active duty in the ministry of world-wide evangelism and of organizing and conducting local churches by the Radio Church of God, which purposes include, but without limitation upon the generality of the foregoing, are:

"1) to establish, maintain and conduct an educational institution, co-educational, on the undergraduate level, in the field of liberal arts and theology, and in conjunction a graduate school of theology;

"2) to own, lease, rent, purchase, receive or acquire such property, both real and personal, as is required for the conduct of classes, academic and business administration, fund raising, dormitory and student housing, campus, recreational and athletic grounds and facilities, laboratories, studies, printing, library, gymnasium, farm properties, livestock and equipment for practical class demonstration and training, and whatsoever property or facilities and equipment are deemed necessary and desirable for the purpose of educating and training the enrolled students of this college;

"3) to receive and solicit by proper means donations, gifts, endowments, legacies, special funds for specific needs pertaining to the general purposes of the college, or to borrow funds and to mortgage or pledge property as security for same, for the carrying out of the educational purposes of this institution.

"Students enrolled in Ambassador College are required to pay tuition, but this is only a

small fraction of the operational budget requirements. In fact, Ambassador College operates at a deficit and is supported by Radio Church of God. In fact, Ambassador College is a creature of the Radio Church of God and its charter specifically states that a part of its purpose is preparing ministers of the Radio Church of God through its school of theology.

"IMPERIAL SCHOOL

"In addition to Ambassador College, Imperial School, which is at the elementary and high school levels, is conducted on the property in the name of Ambassador College and Radio Church of God referred to herein. All of its activities have also been exempt from Federal Taxation under Section 510 (c) 3 of the Internal Revenue Code. The Comptroller of Public Accounts, Austin, Texas, has also adjudged it exempt from the Corporate Franchise Tax and Limited Sales Tax of the State of Texas. Imperial School is financed by the Radio Church of God.

"USES OF ACREAGE

"The entire acreage owned by the hereinabove mentioned institutions is shown by a map attached hereto and made a part hereof marked Exhibit 'A'. It will be noted that the tracts are numbered and are colored in various colors for the purpose of showing more clearly the different uses being made of the various tracts owned by the institution named.

"Those tracts of land colored red, viz: numbers 1, 2, X-3, 4, 9, 10, 11, 12, 13, 14, 15, 16, 26, 27 and 28 are used exclusively for religious, charitable and educational purposes. This use includes the buildings, grounds and improvements, none of which produce any income or revenue to Ambassador

College, Radio Church of God or Imperial School. School, College, Church and/or maintenance buildings along with dormitories, school dining halls, faculty houses, recreational grounds and encampment grounds are located in this area. Upon an examination and investigation of the grounds, we come to the conclusion that this area and the facilities, buildings and grounds located thereon are necessary to fulfill the requirements of the School, College and Church.

"A small portion of tracts numbered 2 and 9 are outlined in yellow for the purpose of showing certain uses being made of that particular portion, which is explained as follows:

"On this yellow portion, Radio Church of God and Ambassador College have constructed resident houses. Ten of these houses are occupied by heads of departments, dean of women and dean of men, and the superintendent of buildings, grounds and maintenance. These faculty members and superintendent of buildings, grounds and maintenance are paid regular salaries and are required to live in the residences furnished by the School and Church. They pay no rent for the occupancy of same. The houses used by the faculty produce no income or revenue for the Church or School. These various faculty members are required to live on the campus because the School is co-educational and the College authorities feel that this is necessary in order to maintain the high degree of morality required by its students. However, a majority of the faculty members and employees of the Church, College and School live off campus in neighboring towns.

"Six houses are occupied by ministers of the Radio Church of God, who are also faculty members. The Church furnishes these houses to its ministers as provided under Article 7150b, V.A.C.S.

"Those tracts colored blue, viz: numbers 5, 6, 7, 8, 17, 18, 19, 20, 21, 23, 24 and 25 are owned by the Church and School but they are being used for grazing and farming purposes and though a part of the products coming from these tracts are used in connection with the Church and School, a major portion of such products are sold commercially and are not a part of those tracts enumerated above which are used for religious and educational purposes. These tracts in the future, or a portion of them, will probably be used in connection with an agricultural program to be offered by the College, said tracts to be used as experimental farms and demonstration in such program, but at the present time they are not being used as such and in our opinion, based on the brief submitted herewith, they are not subject to tax exemption under the laws of our State."

We wish to acknowledge the excellence of the brief which you have submitted in connection with your request and concur in your conclusion that the tracts being used for grazing purposes, to wit, tracts numbers 5, 6, 7, 8, 17, 18, 19, 20, 21, 23, 24 and 25 are not exempt from ad valorem taxation. St. Edwards College v. Morris, 82 Tex. 1, 17 S.W. 512 (1891).

It is not the province of this office to pass on questions of fact. With regards to tracts 1, 2, X-3, 4, 9, 10, 11, 12, 13, 14, 15, 16, 26, 27, and 28, you make the following statements at page 4 of your brief:

". . . The buildings, land, play grounds and improvements are necessary to the three-fold operation of the organizations. These grounds, buildings, improvements and other facilities are used jointly by the Church and educational institutions."

Based on the assumption that these statements are factually correct, we also concur in your conclusion that these tracts are exempt from ad valorem taxation. We have reached our conclusions in view of the following constitutional and statutory provisions and their construction by our courts.

Section 2 of Article VIII of the Texas Constitution authorizes the Legislature, within the limitations therein prescribed, to grant certain exemptions from ad valorem taxes. Section 2 provides, in part, as follows:

> ". . . the legislature may, by general laws, exempt from taxation . . . actual places or /of/ religious worship, also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land; . . . all buildings used exclusively and owned by persons or associations of persons for school purposes and the necessary furniture of all schools . . . ."

Pursuant to these authorizations, the Legislature enacted Articles 7150 and 7150b, Vernon's Civil Statutes. Article 7150 reads, in part, as follows:

> "The following property shall be exempt from taxation, to-wit:
>
> "1. Schools and Churches. Public school houses and actual places of religious worship, also any property owned by a church or by a strictly religious society, for the exclusive use as a dwelling place for the ministers of such church or religious society, the books and furniture therein and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and which yields no revenue whatever to such church or religious society; provided that such exemption as to the dwelling place for the ministers shall not extend to more property than is

> reasonably necessary for a dwelling
> place and in no event to more than
> one acre of land . . . and all such
> buildings used exclusively and owned
> by persons or associations of persons
> for school purposes; . . ."

Article 7150b reads as follows:

> "There is hereby exempted from taxation
> any property owned exclusively and in
> fee by a church for the exclusive use
> as a dwelling place for the ministry of
> such church and which property yields no
> revenue whatever to such church; provided
> that such exemption shall not extend to
> more property than is reasonably necessary
> for a dwelling place and in no event more
> than one acre of land; and provided further,
> that the fact that the ministry uses a por-
> tion of the dwelling as their study, library
> or office shall not prevent the property
> from being considered as being used exclu-
> sively as a dwelling place. For purposes
> of this Act, 'church' includes a strictly
> religious society; and 'ministry of such
> church' means these persons whose prin-
> cipal occupation is that of serving in the
> clergy, ministry, priesthood or presbytery
> of an organized church or religion, whether
> they are assigned to a local church parish,
> synagogue, cathedral or temple or to some
> larger unit of the church organization and
> whether they perform administrative func-
> tions or not."

We are here faced with the applicability and, as we view it, the overlapping of several exemption provisions. The "actual places of religious worship" on the tracts are within the plain and unambiguous language of both the statute and the Constitution and are exempt. Furthermore, the statutory provision exempting "the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and which yields no revenue what-ever to such church or religious society. . ." is not limited to the church building proper, and grounds necessary

to give access to the church or from one part of the church
to another, but includes lands around such buildings reason-
ably necessary for convenient ingress and egress, light, air,
or appropriate ornamentation. City of Houston v. Cohen, 204
S.W.2d 671 (Tex.Civ.App. 1947, error ref., n.r.e.). As pointed
out in Trinity Methodist Episcopal v. City of San Antonio, 201
S.W. 669, 670 (Tex.Civ.App. 1918, error ref.), what would be
"necessary" grounds would be a question of fact.

Adverting to your description of tracts numbered 2 and
9, you state that "Six houses are occupied by ministers of
the Radio Church of God, who are also faculty members". You
suggest that these houses are furnished to the ministers in
accordance with the provisions of Article 7150b. Exemption
cannot be accorded under the provisions of 7150b in view of
City of Houston v. South Park Baptist Church, 393 S.W.2d 354
(Tex.Civ.App. 1965, error ref.) which held that Section 2 of
Article VIII authorizes the Legislature to exempt only one
dwelling place for the ministry of the church. If these
dwellings are to be exempt, it would be by virtue of the fact
that the ministers are also faculty members. We pass, there-
fore, to a consideration of whether this use of these build-
ings by ministers as faculty members brings this property
within the exemption provided in Article 7150 for "all such
buildings used exclusively and owned by persons or associa-
tions of persons for school purposes; . . ."

We quote and reaffirm the following excerpt from
Attorney General's Opinion No. C-1 (1963).

> "A house owned by a school is exempt from
> taxation, even though a faculty member or
> student thereof reside therein, if such
> residence is to afford protection, guid-
> ance and training to students outside of
> the classroom, or if such residence is
> for the convenience of the college by
> reason of their residing at that particular
> locality with reference to their obligations
> to the school, or for some reason with ref-
> erence to the property itself which is the
> concern of the college rather than of them-
> selves and is in fact used exclusively for
> school purposes. Cassiano v. Ursuline
> Academy (supra); Red v. Morris (supra);

> Smith v. Feather, 229 S.W.2d 417 (Civ.App.
> (1950), judgment reformed and affirmed, 149
> Tex. 402, 234 S.W.2d 418 (1950); Cornell
> University v. Thorne, 57 N.Y.S.2d 6 (N.Y.
> Sup. Ct. 1945); Opinion No. V-09 of Attorney
> General of Texas (1947)."

Ever since the decision of the Supreme Court in Cassiano v. Ursuline Academy, 64 Tex. 673 (1885), the policy of this State has consistently been proclaimed to be as stated at page 675 of that opinion.

> "It has been the policy of the state since
> 1849 to encourage educational enterprises
> by exempting them from any share of the burdens
> of government. . . . The constitution of
> 1876, so far from modifying this policy, makes
> munificent provisions for the maintenance of
> free schools. There has been no antagonism
> between the public and private schools to
> warrant the inference that the framers of
> the constitution, in the use of the word
> building, intended a spiteful discrimination
> against private schools.
>
> "The education of the masses is now recognized
> as a function of state government. Those who,
> from charitable considerations, to forward
> sectarian views, or for private profit, have
> organized or conducted schools, have assisted
> the state in the performance of a duty it owes
> to its citizens, which cannot be too thoroughly
> performed, and which the state has never assumed
> that it had either the means or the machinery of
> doing sufficiently well without private assist-
> ance. The Ursuline Academy is performing its
> part in this branch of the public service, and
> it should rather be encouraged by aids, than
> impaired in its usefulness by a tax upon its
> pitiful revenues.
>
> "
> . . . .
>
> "All the buildings and all the land sought to
> be sold by appellant were necessary and used
> for the proper and economical conduct of the

school. . . . The grounds were used for
the recreation of the pupils, and to supply
the school with vegetables. Authority is
not wanting to extend the exemption to land
much less directly employed to forward the
interests of the school. . . ."

The most recent acknowledgment of this case by our Supreme
Court is <u>River Oaks Garden Club v. City of Houston</u>, 370 S.W.2d
851, 856 (1963).

Assuming that you are correct in your determination as
a fact that all of the buildings, land, play grounds and improve-
ments comprised in tracts 1, 2, X-3, 4, 9, 10, 11, 12, 13, 14,
15, 16, 26, 27, and 28 are presently used solely and exclusively
for educational purposes, we reiterate that we concur in your con-
clusion that the above numbered tracts are exempt from ad valorem
taxation.

## S U M M A R Y

Actual places of religious worship on
land which belongs to the Radio Church of
God are exempt from ad valorem taxes as is
the land around such places reasonably
necessary for convenient ingress and egress,
light, air or appropriate ornamentation.
All of the buildings and all of the land
which are necessary and properly used to
forward the interest of Ambassador College
and Imperial School are exempt from taxa-
tion. The land which belongs to Ambassador
College and which is used for grazing and
farming purposes is not exempt from ad valorem
taxation.

Yours very truly,

WAGGONER CARR
Attorney General

By Marietta McGregor Payne
Marietta McGregor Payne
Assistant

MMP/fb

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Mario Obledo
W. E Allen
Pat Bailey
Kerns Taylor

APPROVED FOR THE ATTORNEY GENERAL
BY: T. B. Wright