DANA COLLEGE, PROSECUTOR, v. STATE BOARD OF TAX APPEALS AND CITY OF NEWARK, A MUNICIPAL CORPORATION, DEFENDANTS.

Argued January 23, 1936—Decided April 23, 1936.

Before Justices CASE and BODINE.

For the prosecutor, *Arthur T. Vanderbilt.*

For the city of Newark, *Frank A. Boettner* and *Walter P. Reilly.*

PER CURIAM.

On October 1st, 1933, the land and building of the prosecutor at No. 38-54 Rector street, Newark, was assessed at $201,900. Prosecutor appealed first to the Essex county board of taxation and then to the state board of tax appeals, and both of those bodies affirmed the assessment. The judgment of the state board is brought before us by writ of *certiorari.* The issue is whether, on October 1st, 1933, prosecutor was entitled to exemption under section 203, subdivision 4 of the General Tax act of 1918, as amended *Pamph. L.* 1931, *ch.* 372; *N. J. Stat. Annual* 1931, *p.* 467, § 208-66d (203) *subdiv.* (4), applicable to colleges or schools not conducted for profit, subject to the *proviso* that charitable or benevolent work of an appropriate institution may be supported partly by fees and charges if the building is wholly controlled by and the entire income therefrom is used for charitable or benevolent purposes. There is much in the record that seems to us irrelevant to the issue framed as of

that date. Incidents in proof which occurred thereafter tend to establish that the institution, as it now is, is in the exempt class but are of little evidential value on the present issue. The state board of tax appeals was of the opinion that the institution had not, on the mentioned date, sufficiently demonstrated that it had emerged from the class of commercial enterprises.

The New Jersey Law School and its affiliate, the Seth Boyden School of Business, were admittedly, until a few weeks before the assessing date, operated commercially and at a profit. Dana College was incorporated April 2d, 1930, as an association not for pecuniary profit and is said not to have produced a profit. It was operated, however, by those who were interested in the other schools at a time when, as is generally known, a college course as a pre-legal requirement was being urged and shortly before the adoption of the Supreme Court rule requiring two full years' attendance and study at an approved college or university, later modified with the alternative of the academic equivalent of two such college years. Shortly prior to October 1st, 1933, there was a merger agreement between the New Jersey Law School, the Seth Boyden School of Business and Dana College, which, however, reserved to those who had owned the two affiliate schools and the real estate a marked measure of control over and protection in the merged institution and the property thereof. The land and building had been purchased in 1927 by the New Jersey Law School from the Ballentine Brewery Company for $155,000. In 1931 the law school conveyed the property to 40 Rector Street Corporation which, as a part of the merger proceedings, conveyed the property to Dana College in August, 1933, for the consideration of $405,000. It is said that the difference between $155,000 and $405,000 had been expended on the property to fit it for school uses. Dana College paid that purchase price with $2,000 in cash and a mortgage for $403,000 bearing interest ranging from two to four per cent. The law library and personal property and fixtures had been owned by Dorset Investment Corporation which undertook to sell the personal property, exclusive of the law library, to Dana College for the

sum of $5,000, payable in five annual installments, and to lease the library at a charge of $1,500 per annum for a period of three years. There was a reservation to the law school whereby it might change its name to Litchfield School of Law, or some other name not in conflict with New Jersey Law School, and continue outside of Essex county without further connection with Dana College.

On April 24th, 1933, Mr. Richard D. Currier was president of 40 Rector Street Corporation, of Dana College, of Dorset Investment Company and of the New Jersey Law School and was the person who, on behalf of these several corporations, signed each of the offers leading to the merger. There was also an agreement whereby Mr. Currier was to be retained as treasurer of Dana College over a period of years at the compensation of $10,000 per year. Incidental to the merger there were contributions by Mr. Currier, his daughter, Mrs. Mason, and others to an endowment fund of Dana College, which fund, on the 1st of October, 1933, amounted to $78,000.

Without going into greater detail we express our thought that, except for the creation of this modest endowment fund, there seems to have been no difference in the functioning of the institutions after the merger from that which theretofore had existed when the law school and the business school were admittedly being operated for commercial gain. The equity of Dana College in the property was very slight, and while there was a provision in the merger agreement that if there should be a failure of Dana College its assets should be applied to similar educational purposes, the property was subject to the vast mortgage which, upon default, could, of course, be foreclosed and the equity of the college shut out. The law library continued in the ownership of the Dorset Company, and the law school was protected in perpetuating its existence against default or failure of the college.

The fact of incorporation under the non-pecuniary act is not conclusive proof that the corporation is a charitable institution. The facts of each case determine the character of the corporation. *Town of Montclair* v. *State Board of Equalization of Taxes*, 86 *N. J. L.* 497; 92 *Atl. Rep.* 270. So it was for the prosecutor to demonstrate that on October 1st, 1933,

not at some later date, it was entitled to the exemption. It is a question of fact. The assessing authorities and the two appellate taxing bodies determined that question in the negative. We are inclined to think that the college had not sufficiently emerged from its chrysalid state for us, on the printed book, to say that the state board of taxation was wrong in its conclusions. The property, the law school, the business school and the college were being operated precisely as theretofore. The former owner of the real estate held a mortgage, in the full amount of the sale price save only a pittance, rental was being paid for the property in use but not bought, those who had made conveyances were fully protected against default, compensation for services was being paid then as theretofore, and the proceeds of the enterprise were dedicated, so far as necessary, to those requirements. There was no lessening of the charge to students and no broadening of the charitable function. We are of the mind that on the facts in proof bearing upon the first day of October, 1933, the finding of the state board of taxation should not be reversed.

The writ will be dismissed, without costs.