30 N.J. Super. 82 (1954)
103 A.2d 383
BRAD RAFFERZEDER, BY HIS GUARDIAN AD LITEM, WILFRED RAFFERZEDER, AND WILFRED RAFFERZEDER, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
RALEIGH FITKIN-PAUL MORGAN MEMORIAL HOSPITAL AND ANN MAY MEMORIAL FOUNDATION, IN THE TOWN OF NEPTUNE, A CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1954.
Decided March 9, 1954.
*83 Before Judges EASTWOOD, JAYNE, and CLAPP.
Mr. William T. Wichmann argued the cause for appellants (Mr. Milton Kosene, attorney).
Mr. J. Victor Carton argued the cause for respondents Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
The question propounded to us for appellate determination in accordance with R.R. 1:7-1(c); 2:7-1, is a relatively narrow one. It reads:
"Did the trial court commit error in excluding evidence of the financial operation of the defendant hospital corporation when its charitable status was denied by the plaintiffs?"
The exclusion of evidence to which the inquiry relates is the action of the trial judge in sustaining the objections to certain specific questions addressed by the attorney of *84 the plaintiffs to the administrator who is in charge of the management of the institution generally known as the Fitkin Memorial Hospital situate in Monmouth County. The anticipation that the answers to the questions, if permitted to have been given, would have supplied evidence that the Fitkin Memorial Hospital is not a charitable institution seems fanciful, but that observation is not pertinent to the legal propriety of the interrogation of the witness.
A brief prefatory explanation will suffice. On February 17, 1951 the infant plaintiff, who was born on September 15, 1950, sustained a bodily injury while a patient at the defendant hospital which was alleged to have been proximately caused by the carelessness of the institution, the administrator, and certain designated nurses. The present action was instituted by the infant through the representation of a guardian ad litem and by the infant's father to recover from the hospital association and the individuals mentioned compensatory damages for the bodily injuries suffered by the infant in the mishap and the consequential losses incurred by the father.
The alleged causes of action against the individual defendants were voluntarily dismissed. The defendant hospital averred in its answer that it was being conducted as a charitable institution and accordingly entitled to the immunity accorded by the law to such institutions from liability to respond in damages for the negligence of its employees of the nature alleged in the complaint. For reasons of expedition this issue became a preliminary one in the order of the introduction of the evidence at the trial.
At the conclusion of the pertinent evidence the trial judge resolved that the hospital was a charitable organization within the import and meaning of our decisional law and that in the circumstances of the mishap it was entitled to be exonerated from liability. A conformable judgment for this defendant was entered from which the plaintiffs prosecute the present appeal.
The principle of law which confers upon charitable institutions such as hospitals and upon eleemosynary corporations *85 in certain circumstances an immunity from liability does not appear to be a subject of discord in the consideration of the present appeal. In our jurisdiction we turn to the decisions in D'Amato v. Orange Memorial Hospital, 101 N.J.L. 61 (E. & A. 1925); Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), affirmed 110 N.J.L. 509 (E. & A. 1933); Simmons v. Wiley M.E. Church, 112 N.J.L. 129 (E. & A. 1934); Kolb v. Monmouth Memorial Hospital, 116 N.J.L. 118 (E. & A. 1936); Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325 (E. & A. 1939); Rose v. Raleigh Fitkin-Paul Morgan, etc., Foundation, 136 N.J.L. 553 (E. & A. 1948); Woods v. Overlook Hospital Ass'n, 6 N.J. Super. 47 (App. Div. 1949); Jones v. St. Mary's Roman Catholic Church, 7 N.J. 533 (1951).
Assuredly the basis for the immunity is the actual devotion of the institution to a charitable pursuit. The claim of immunity is an affirmative defense and the burden of proving the right to such exoneration descends upon the party projecting such an averment. Equally positive, where the basis of the defense is in issue, is the opportunity of the plaintiff to submit competent and relevant evidence in the endeavor to prove that the defending institution is not in fact being conducted in furtherance and support of any charitable and beneficent object and purpose.
We therefore direct our attention to the evidence in the present case. The hospital derives its corporate existence from the act of the Legislature authorizing the incorporation of associations not for pecuniary profit. The certificate of incorporation was admitted in evidence which contains the following disclosure of the purposes of the association:
"SECOND: The purposes for which the Association is formed and merged are the maintenance of a public hospital, providing medical advice and medicines and medical and surgical aid for the injured, sick and disabled and such others as may need medical attention and medical treatment, and the establishing, maintaining and operating of a school for the training, education, instruction or preparation of persons to act as nurses of sick, injured, infirm, aged, idiotic and insane persons."
*86 However, it is not necessarily to be understood that an association incorporated under the legislation relating to the granting of corporate franchises to associations not for pecuniary profit is by the mere issuance of its charter presumed to be a charitable organization such as were those incorporated under the "Act to provide for the incorporation of associations for the erection and maintenance of hospitals * * *." L. 1877, p. 159, repealed L. 1899, pp. 189, 192. D'Amato v. Orange Memorial Hospital, supra.
Certainly the disclosure of the fact that the defendant was incorporated as a non-pecuniary profit association is not conclusive proof that it is in its activities and practices a charitable institution. Dana College v. State Board of Tax Appeals, 14 N.J. Misc. 308 (Sup. Ct. 1936), affirmed 117 N.J.L. 530 (E. & A. 1937). The charitable character of the association depends upon the facts. Cf. Montclair v. State Board of Equalization of Taxes, 86 N.J.L. 497 (Sup. Ct. 1914), affirmed 88 N.J.L. 374 (E. & A. 1915); Kimberley School v. Town of Montclair, 2 N.J. 28 (1949).
The administrator of the hospital testified that any patient regardless of his or her ability to pay for the medical, surgical and nursing care is admitted and that "all of the funds received are used for the maintenance of the hospital." Moreover, the written interrogatories propounded to the defendant hospital by the plaintiffs and the answers thereto were ushered into evidence on behalf of the plaintiffs, and the answers state that the hospital is maintained by charitable contributions, donations, and by receipts from paying patients, that the officers do not receive any dividend, bonus, salary or other moneys and that care is given any one in need of medical attention regardless of ability to pay for it, and that the cost of that service is defrayed by voluntary donations and contributions.
And so there appears to be evidence supporting to a prima facie degree the averment that this defendant was in the legal category of a charitable association.
It was this evidence the attorney for the plaintiffs sought by the examination of the witness to render dubious *87 and factually controversial. Mr. Carter, the administrator of the hospital, produced the audit disclosing the receipts and expenditures of the institution for the year 1951. Let us observe what occurred at the trial:
"Q. Now, Mr. Carter, that audit covers, that 1951 audit which you have covers the total operations for the year 1951, is that right, sir? A. Right.
Q. And when that report makes reference to the outpatient department, it is meant the clinic, is that so?"
Objection was interposed by the attorney of the defendant.
"THE COURT: Can you have more of a charity than you have right in this case?
MR. KOSENE: Sir, I don't admit there is any charity in this case.
THE COURT: I will sustain the objection.
MR. KOSENE: Sir, may I be heard further on that point?
THE COURT: No. Proceed.
MR. KOSENE: May I say this, your Honor 
THE COURT: Proceed with your questioning.
MR. KOSENE: If the objection is sustained, it means that I can't go into the record.
THE COURT: You can go into the policies of the hospital.
MR. KOSENE: But I can't go into the record.
THE COURT: It makes no difference whether they made a million dollars one year and lost ten million the next year, or what it is.

* * * * * * * *
THE COURT: Well, now, what do you want now? Do you want to proceed on the questioning with regard to the report?
MR. KOSENE: Yes, sir.
THE COURT: All right, that is objected to and the objection is sustained.
Q. Mr. Carter, how many patients were in the hospital in 1951?
MR. CARTON: Objected to as immaterial.
THE COURT: Sustained.
Q. How many patients, Mr. Carter 
THE COURT: I will sustain all the objections along that line.
MR. KOSENE: Well, let me ask this question. It may be a little different.
Q. How many patients of the total number in the hospital in 1951 were charity patients?
MR. CARTON: I object to it as immaterial.
THE COURT: Sustained."
Trial attorneys are sometimes squeezed between the pressure of their professional respect for the decisively announced rulings of the judge and the stress of their own *88 conceptions of the applicable law. In such exigencies discretion arrests persistence and tenacity of position and, as here, the forbidden inquiry is involuntarily terminated with a recorded notation of an objection to the court's ruling.
In the present case the trial judge expressed the conviction that the audit disclosing the sources of the receipts and the character of the disbursements of the hospital was a mere matter of "bookkeeping" information necessarily irrelevant and immaterial to the issue. Abstractly we are not in accord with that view.
It is reasonably conceivable that individuals may incorporate an association for ostensible non-profit and charitable purposes and claim the appropriate legal immunities from taxation and civil liability and yet in reality so conduct the activities of the association as to simulate a private enterprise from which the individuals in charge derive and absorb as disclosed by their books and records a personal monetary profit. Certainly where the immunities are claimed, the governmental agency or the plaintiffs who are adversely affected may legitimately inquire into such records and expose the artifice.
We are of the opinion that the capacious deprivation of the privilege of the attorney for the plaintiffs to indulge in any inquiry whatever concerning the audit and report and also relative to the admission to the hospital in 1951 of any patients in need of charitable care and attention was erroneous.
We conjecture that the trial judge reasonably apprehended that the endeavors of the attorney of the plaintiffs to elicit evidence that the Fitkin Memorial Hospital was not a charitable institution would be an extravagant expenditure of time and as futile as lowering a bucket into an empty well. Perhaps such would have been the eventuality and one possibly to be anticipated at a new trial, but we observe that the infant plaintiff sustained an exceedingly severe and grievous bodily injury in the mishap. The error in law is plain. R.R. 1:5-3(c); 2:5. In this situation we feel it to be our duty to reverse the judgment.