City of Houston v. Scottish Rite Benevolent Association et al.

No. 2910.　Decided May 4, 1921.

(230 S. W., 978.)

**1.—Taxation—Exemption—Public Charity.**

The buildings and grounds of the Scottish Rite Benevolent Association, a corporation, embracing its Scottish Rite Cathedral in the City of Houston, not used for profit, but used as a lodge room and meeting place for two chapters of the Masonic Order, did not constitute "buildings used and owned by institutions of purely public charity," within the meaning of the Constitution (Art. 8, Sec. 2) and were subject to taxation, though the funds of the corporation owning it were devoted solely to such charity. (Pp. 194-200).

**2.—Same—Constitution.**

To be entitled to exemption from taxation, property must be such as is specifically described in the Constitution (Art. 8, Sec. 2) as well as in the statute, the Legislature having no power to extend the exemption further. (Pp. 197, 198).

**3.—Same.**

No building comes within the exemption authorized by the Constitution to "institutions of purely public charity" unless it is both owned and used exclusively by such institution. Morris v. Lone Star Chapter No. 6, Royal Arch Masons, 68 Texas, 698. (P. 198).

**4.—Same—Institutions of Public Charity—Construction.**

The meaning of the language "institutions of purely public charity" in Article 8, Section 2 of the Constitution has been construed to be "all buildings used exclusively and owned by institutions of public charity" (Morris v. Lone Star Chapter, etc., 68 Texas, 701), and the same language, when carried without change into the amendment of Section 2, must be held intended to bear the construction so previously given it. (P. 198).

**5.—Public Charity.**

Charity need not be universal to be public. It is public when it affects all the people of a community or State by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or State. It does not become a private as distinguished from a public charity because limited to a certain sect, or fraternal order, or color, or class, no matter what be the basis, if lawful, on which the groups of beneficiaries are formed. (Pp. 198, 199).

**6.—Same—Charity Purely.**

By "purely" it was meant, in the Constitution, to describe the quality of the charity, rather than the means by which it is administered—that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity. (P. 199).

**7.—Same—Exclusive Use.**

The requirement that the property be used exclusively for an institution of purely public charity is not satisfied by the fact·that its use by others was permitted by the owner to obtain revenues to be devoted entirely to the owner's work of charity, nor by the fact that those sharing the use pay no rent. The actual direct use must be exclusive on the part of the institution favored by the constitutional provision. (P. 200).

**8.—Same.**

Though the activities of the owner of the property (the Scottish Rite Benev. Assn.) were purely charitable, yet if the property (Scottish Rite Cathedral) by the very manner and terms of its acquisition, it being purchased and erected by the funds of the two Masonic Orders, required it to be used, as it was in fact used, by such two orders "to enable them to pursue their work as masonic lodges" such work being only partly charitable, the use of the property was not so exclusively for charitable purposes as to permit of its exemption from taxation. (P. 200).

Questions certified from the Court·of Civil Appeals for the First District, in an appeal from Harris County.

The City of Houston sued the Scottish Rite Benevolent Association for taxes on its property. The case being submitted under an agreed statement of facts, judgment went for defendant, and this was affirmed on plaintiff's appeal, but on motion for rehearing the question involved was certified to the Supreme Court.

*J. C. Hutcheson, Jr.,* for appellant.—It appearing from the agreed case that the plaintiff is a corporation organized for the purpose, as stated in its charter, to provide for the relief of needy masons, their wives, widows, mothers and children, with the right to own, sell or mortgage real estate for the use of said corporation; and it further appearing from the statement of facts that sums derived from the annual dues are used for the purpose of the relief of needy masons, their wives, widows, mothers and children, and that the institution is conducted for the benefit of the masonic order; the mere fact that certain incidental charities are distributed to others than masons does not make this institution one of "purely public charity," but on the contrary the same is an institution whose beneficences are limited to special and particular persons or classes, so that the property of such institution is not exempt under the Constitution. Bangor v. Masonic Lodge, 40 Am. Rep., 369; Delaware County Institute of Science v. Delaware County, 94 Penn. St., 163; Morning Star Lodge v. Hayslip, 23 Ohio St., 144; Young Men's Protective T. & B. Society v. City of Fall ·River, 160 Mass., 409; Philadelphia v. Masonic Home, 160 Penn., St., 572; 23 L. R. A. 545; Newport v. Masonic Temple Association, 49 L. R. A., 252; Fitterer v. Crawford, 157 Mo., 51; 50 L. R. A., 191.

*Baldwin & Baldwin, Ball & Seeligson* and *C. W. Truehart;* for appellees.

The two masonic lodges using the property involved, as well as appellee, are primarily and essentially institutions of purely public charity, and since.their use of said property as a meeting room and lodge-room is a means and incident to their purely charitable purposes, such property was used exclusively by institutions of purely public charity for their appropriate purposes, that is, purely charitable purposes. Horton v. Colorado Spr. Masonic Bldg. Soc., 173 Pac., 62; Kappa K. G. House Assn. v. Pearcy, 52 L. R. A. (N. S.) 995; Red v. Morris, 72 Texas, 554; City of Dallas v. Cochran, 166 S. W., 32; City of Louisville v. Werne, 80 S. W., 224; State v. Mc-Gurn, 86 S. W., 138; Cassiano v. Ursuline Acad., 64 Texas, 673; State v. Johnston, 21 L. R. A. (N. S.) 171; Commonwealth v. First Christian Church, 183 S. W. (Ky.), 943, 946; Scott v. Society, 81 N. W. (Neb.), 624; Gerke v. Purcell, 25 Ohio St., 242; Church v. Raine, 10 Ohio Dec., 449; Salt Lake Lodge v. Groesbeck, 120 Pac., 192; State v. Allen, 127 N. E. (Ind.), 145; Yale University v. New Haven, 42 Atl. (Conn.), 88; Emerson v. Trustees, 70 N. E. (Mass.), 442; People v. Feitner, 61 N. E., 762, 168 N. Y., 494; Bishop v. Arapahoe Co., 68 Pac. (Col.), 272; St. Paul v. Concord, 27 L. R. A., (N. S.) 910.

Since the property involved is owned and occupied by the association, an institution of purely public charity, it is not necessary that such occupancy be exclusive of all others, because the law permits the use of such property by its rental when, as here, all funds derived from such use are appropriated by such institution solely to either maintaining the property or for purposes absolutely and purely charitable. Scott v. All Saints Hospital, 203 S. W., 146; State v. Settegast, 227. S. W., 253; City of Staunton v. Mary Baldwin Seminary, 39 S. E. 596; Petersberg v. Petersburg Ben. Assn., 78 Va., 431.

It is constitutional, because the Constitution authorizes the exemption simply of "institutions of purely public charity" without any restrictions as to use. State v. Settegast, 227 S. W., 253.

The construction given the word 'institutions' in the Settegast case is borne out, not alone by the Ohio courts in the case of Gerke v. Purcell, 25 Ohio St., 240, but also by the Kentucky courts, as forcibly exemplified in the case of Trustees v. Louisville, 36 S. W., 921, 924; and also by the case of Nobles Co. v. Hamline University, 48 N. W. (Minn.), 1119.

The statute is constitutional, because, even if the Constitution authorizes the exemption only of all buildings used exclusively and owned by institutions of purely public charity, still this would warrant the legislature in exempting buildings of such institutions, the proceeds of which are used by them for purposes of purely public charity. State v. Packard, L. R. A., 1917 B. (N. D.), 710; Ashford v.

111 Tex.—13

Goodwin, 103 Texas, 461; Galveston Wharf Co. v. Galveston, 63 Texas, 14; Daugherty v. Thompson, 71 Texas, 192; State v. Settegast, 227 S. W., 253; Scott v. All Saints Hospital, 203 S. W., 146; City of Staunton v. Mary Baldwin Seminary, 39 S. E., (Va.), 596, and City of Petersburg v. Petersburg Ben. Ass'n., 78 Va., 431.

Without further discussion of other authorities to the same effect, we cite as sustaining a liberal interpretation of the words "exclusively used:" People v. Sayles, 50 N. Y. Supp., 8, 10; Cumberland Lodge v. Mayor, 154, S. W., (Tenn.) 1141, 1145; State v. Fisk University, 10 S. W., (Tenn.), 284; Davis v. Cincinnati Camp Meeting Ass'n., 49 N. E. (Ohio), 401, 405; Horton v. Colorado Springs Masonic Bldg. Soc., 173 Pac. (Colo.), 61, 62, 63; Grand Lodge v. Board, 117 N. E. (Ill.), 1016, 1018; State v. Chatham , 9 L. R. A. (N. J. L.), 198; People v. Murry, 42 N. E. (N. Y.), 584, 585; City of Henderson v. Strangers Lodge, 17 S. W., (Ky.), 215; Trustees v. Taylor, 25 Atl. (Pa.), 55, 57; Philadelphia v. Penn. Hospital, 25 Atl. (Pa.), 1076

Mr. Justice GREENWOOD delivered the opinion of the court.

In this case the parties made the following agreement.

"On the trial of the above entitled and numbered cause the same is and shall hereby be submitted upon the agreed statement of facts hereinafter set forth which said statement constitutes all the facts presented at the trial, and that the sole and only question to be determined by the trial court as well as the Court of Civil Appeals and the Supreme Court, in the event of an appeal, is as to whether or not under the agreed statement of facts the defendant, the Scottish Rite Benevolent Association, of Houston, Texas, is liable to the payment of taxes, under the Constitution and laws of the State of Texas, or is said property exempt from taxation? If exempt, then judgment shall be rendered for the defendants. If not exempt, then judgment to be rendered for the plaintiff for the sum of $378.11, which amount is the taxes, interest, penalties and costs for the years 1908, 1909, 1910, 1911 and 1912, and for foreclosure of plaintiff's tax lien on the property described in Paragraph 4 of this agreement, against both defendants,    The Magnolia Camp, No. 13 W. O. W. being a party defendant and because it is the present owner of the property.

AGREED STATEMENT OF FACTS.

I.

"That on the 20th day of March, 1903, the State of Texas issued to the defendant the following charter:
State of Texas.
County of Harris.

"Know all men by these presents, that the members of the Ancient and Accepted Scottish Rite of Freemasonry, of the City of Houston, County of Harris and State of Texas, are desirous of becoming a body corporate.

"1.   The name of said corporation shall be 'The Scottish Rite Benevolent Association, of Houston, Texas.'

"2.   The purpose for which said corporation is formed is to provide for the relief of needy masons, their wives, widows, mothers, and children, with the right to own, sell or mortgage real estate, for the use of said corporation, and to sue and be sued by its corporate name.

"3.   This corporation shall have its place of business in the City of Houston, County of Harris, State of Texas.

"4.   That the term for which corporation shall exist shall be fifty years.

"5.   That said corporation has neither capital stock nor assets.

"6.   The trustees of said corporation shall be five in number, and for the first year the following named persons shall be trustees; W. S. Hoskins, Max Taub, J. S. Wilson, J. C. Baldwin and A. J. Schureman who each and all reside in the City of Houston, in Harris County,

## II.

"The above charter was duly signed, acknowledged, filed and accepted in the Secretary of State's office, and issued as required by law.

## III.

"That the members of the 'Ancient and Accepted Scottish Rite of Freemasonry of the City of Houston' referred to in the charter, include all members of the San Jacinto Lodge of Perfection No. 6, and Houston Chapter Rose Croix No. 5.

## IV.

"The corporation during the years above mentioned was the owner of Lot 8 and 25 x 25 feet off Lot 11, and 25 x 25 feet off Lot 12, and adjoining Lot 8, and facing 50 feet on La Branch Street and running back 125 feet parallel with Rusk Avenue, being in the City of Houston on the S. S. B. B., Harris County, Texas, together with the improvements thereon which consist in what is termed and styled the 'Scottish Rite Cathedral', this being the only improvement on said property, and being a lodge room for the members of said association. The lot and the building situated thereon are actually used exclusively by members of the association, and no part of the same is rented or used by any other person or institution. That the association owns no property used with a view of profit. That it has no capital stock and declares no dividends.

## V.

"The regular meetings of San Jacinto Lodge of Perfection No. 6 are held in said lodge room on the fourth Thursday of each month, and of the .Houston Chapter of Rose Croix No. 5, on the first Friday of each month. There are often held called meetings of the lodges. Each member pays annual dues of $2.50, while persons applying for and taking degrees pay to the order $50.00. The sums derived from these sources, as well as from all other sources, over and above the current necessary running expenses, are used for the purpose, and for no other purpose except as shown in paragraph 7 hereof, than the relief of needy masons, their wives, widows, mothers and children, this relief not being confined to members of this local association, but to any and all needy masons, their wives, widows, mothers and children, when they are not able to provide for themselves.

"There are no salaried or paid officers; there is no rule in the ritual or by-laws relative to what disposition shall be made of its funds. The only reference thereto is found in the charter of the association.

## VI.

"The funds of the Scottish Rite Benevolent Association are voted to it by the San Jacinto Lodge of Perfection No. 6, and the Rose Croix Chapter No. 5. These two organizations are Scottish Rite Masonic Lodges, the membership consisting of masons who have attained the 14th and 18th degree. The funds of these two bodies are derived from fees of initiation and dues of members.

The fees of initiation are $22.50 for the Lodge of Perfection and $25.00 for the Rose Croix Chapter, making a total of $47.50. Dues of $2.50 per year for both bodies. In addition to these funds, at each stated meeting of the Lodge of Perfection and Rose Croix, the Box of Fraternal Assistance is passed with the admonition to contribute to the relief of the poor and distressed, such sum as the member is accustomed to spend needlessly each day. This fund derived from the Box of Fraternal Assistance, is delivered into the hands of the Almoner, who disposes of is to whomsoever may need it, irrespective of affiliation or condition, such as may appeal to him. No report being made of the funds to either body.

"The funds secured from these two bodies have been invested in a home for those bodies to enable them to pursue their work as masonic lodges, and at stated times and when brought before the bodies, some of the money is appropriated for various charitable purposes. These charities being dispensed to persons whether or not they are masons, the word 'mason' including all members of masonic families and dependants. There is no revenue received by the association, except some contributions from the two masonic lodges named above. The officers draw no salaries.

## VII.

"This institution is conducted for the benefit of the masonic order. All the money received from the two masonic lodges mentioned is used for the members' benefit, except amounts voted to charities on motion made by some brother. The charities for which money is voted are not required by the rules or by-laws of the order to be institutions which are connected with masonic orders. There is no provision in the rules or by-laws that requires how the money shall be spent, except the purpose being to provide for the organization, so that they may have a home at which they can meet at the least possible expense, in order to carry out the purposes of fraternal unity. The prime object is that the funds are to be expended for the relief of families of needy masons or for funding or supporting homes or institutions for masons. The larger portion of the money has been given to needy individuals, $500.00 being spent during the Galveston flood, and contributions have been made to the Harris County School for Girls, the Industrial Home for Girls, and several other organizations. The order is not one that does nothing but dispense charity, but it does dispense charity. The main purpose of the order is to provide a lodge and place of meeting, and to look after and provide for individual masons and their families. The Almoner is not given any instructions requiring him to confine the donations to the family of masons or to give them preference in the distribution of the fund, and the contributions of the Almoner constitutes, a real, substantial contribution, so that he always has money for distribution."

The Court of Civil Appeals affirmed a judgment of the trial court in favor of appellee, based on the conclusion that appellee was an institution of purely public charity.

On motion for rehearing, in view of the general importance of the decision, and because of some doubt as to its correctness, the Court of Appeals certified to the Supreme Court the following question:

"Is the property of the Scottish Rite Benevolent Association, above mentioned, subject to taxation by the City of Houston or is it exempt from such taxation under the Constitution and laws of this state?"

If we assume that the property of the Association was exempt, under the statute, the question remains, was it exempt under the Constitution? Referring to the provision of the Constitution that laws shall be null and void, exempting property from taxation other than the property specifically described in Section 2, of Article 8, it was held in Morris v. Masons, 68 Texas, 701, 5 S. W., 519, that "it is clear, therefore, that in order to escape the charges of government the property must appear to be embraced both within some one of the classes named in the section mentioned, and also in the exemptions actually provided in the statute made in pursuance thereof."

The opinion of Judge Gaines in Morris v. Masons, *supra*, made certain the meaning of the terms of the Constitution, in Section 2, of Article 8, that "the Legislature may, by general laws, exempt from taxation . . . all buildings used exclusively and owned by persons or associations of persons for school purpose . . . and institutions of purely public charity." Such meaning is that the Legislature may, by general laws, exempt from taxation "all buildings used exclusively and owned by persons or associations of persons for school purposes, . . . and all buildings used exclusively and owned by institutions of purely public charity." So, no building comes within the exemption authorized by the Constitution to "institutions of purely public charity" unless it is both owned and used exclusively by such an institution.

No departure from the above construction of the mandate of the constitution can be favorably considered. For, it was the language of Section 2, of Article 8, as construed by the Supreme Court, which was carried without change into the subsequent amendment of the section. The presumption is conclusive that the people re-adopted the provision with knowledge of its declared intent.

During the years for which a recovery of taxes is sought, the property was owned by the Scottish Rite Benevolent Association, although subject to the rights of two masonic organizations, named San Jacinto Lodge of Perfection No. 6 and Houston Chapter of Rose Croix No. 5. The charter of the Association declared its purpose to be to provide relief to needy masons, their wives, widows, mothers and children. Any person in need came within the scope of part of the relief actually and habitually extended by the Association.

The property was used exclusively by members of the Scottish Rite Benevolent Association, being used to furnish a lodge room for such members and being also used to provide a lodge room and meeting place for San Jacinto Lodge of Perfection No. 6 and Houston Chapter of Rose Croix No. 5. The funds to purchase the property and to erect the improvements thereon, called the Cathedral, were provided by the above mentioned Lodge and Chapter in order that they might have a permanent home. They were engaged in the work of the masonic order, which, in the language of the agreement of counsel, is not an order "that does nothing but dispense charity, but it does dispense charity." Their entire receipts were donated to the Association less only necessary operating expenses.

The contention is vigorously stressed that the Association was not an "institution of purely public charity," because those to whom it extended aid were confined in the main to the voluntary members of the masonic order and their relatives.

In our opinion, the Legislature might reasonably conclude that an institution was one of "purely public charity" where: first, it made no gain or profit; second, it accomplished ends wholly benevolent; and

third, it benefited persons, indefinite in numbers and in personalities, by preventing them, through absolute gratuity, from becoming burdens to society and to the state.

Looking either to the purpose for which the Scottish Rite Benevolent Association was formed or to the philanthropies which it practised, it seems to fulfill the requirements just specified for an institution of purely public charity.

Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming to a material extent, that which otherwise might become the obligation or duty of the community or the state. The care of those unable to provide for themselves certainly may devolve on those of the same community or state. It is to lose sight of actual results not to see the public benefit in reasonable provision for the needs of large and indefinite groups of individuals, no matter what may have been the basis, if lawful, on which the groups were formed.

The opinions in the following cases support the conclusion that an organization doing work similar to that specified in the Association's charter may be reasonably classified as an institution of purely public charity: Masonic Education & Charity Trust v. Boston, 201 Mass., 325; 87 N. E., 602; Norris v. Loomis, 215 Mass., 345, 102 N. E., 419; Minns v. Billings, 183 Mass., 129, 5 L. R. A., (N. S.) 686, 97 Am. St., 420, 6 N. E., 593; Grand Lodge v. Board of Review, 281 Ill., 483, 117 N. E., 1016; State v. Packard, 35 N. D. 298, 160 N. W., 150, L. R. A., 1917B, 710; Widows' & Orphans' Home v. Commonwealth, 126 Ky., 386, 16 L. R. A. (N. S.), 842, 103 S. W., 354; Green v. Fidelity Trust Co., 134 Ky., 311, 20 Ann. Cases, 863, 120 S. W., 283; Burd Orphan Asylum v. School District, 90 Pa. 35; Troutman v. Orphans' Home & Industrial School Assn., (Kan.) 5 L. R. A. (N. S.) 692, 64 Pac., 37; and, the able dissenting opinion in Phila. v. Masonic Home of Phila., 160 Pa. 572, 23 L. R. A. 548-552, 40 Am. St., 736, 28 Atl. 954.

We think the Legislature would have been warranted in concluding, as held by the Kentucky Court of Appeals in the case of Widows' & Orphans' Home v. Commonwealth, *supra,* that the word ''purely'' was meant ''to describe the quality of the charity, rather than the means by which it is administered, that it should be wholly altruistic in the end to be attained, and that no private or selfish interest should be fostered under the guise of charity; but it was never meant that, because a charity was limited by its terms to objects belonging to a certain sect or fraternal order, or color, or class, it was a private, and not a public charity.''

Hence, we would not declare this property without the exemption authorized by the Constitution by reason of the nature or scope of the charity which was established and maintained by the Scottish Rite Benevolent Association.

But the question remains, whether the property was owned and used exclusively by an institution of purely public charity. It does not satisfy the constitutional requirement that the use by others was permitted by the owner to obtain revenues to be devoted entirely to the owner's work of purely public charity. Morris v. Masons, 68 Texas, 703, 5 S. W., 519. Nor is the requirement satisfied by the fact that those sharing the use pay no rent. Red v. Johnson, 53 Texas 288. The actual, direct use must be exclusive on the part of such an institution as is favored by the constitutional provision.

By the very manner and terms of this property's acquisition, it was required to be used, as it was in fact used, by the two masonic orders, "to enable them to pursue their work as Masonic lodges," such work being, as agreed, only partly charitable.

To the extent that the property was used by masonic organizations, whose activities included other fields than charity, it was not, and could not be, used exclusively by an institution of purely public charity. Not being used exclusively by an institution of purely public charity, the claim to exemption under the constitutional provision fails, and our answer to the certified question is that the property was subject to taxation.