## RAYMONDVILLE MEMORIAL HOSPITAL et al. v. STATE et al.

### No. 12456.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 19, 1952.

Rehearing Denied Dec. 31, 1952.

R. F. Robinson, Raymondville, Philip R. Overton and P. P. Ballowe, Austin, for appellant.

Jesse G. Foster and Nielson & McCormick, Raymondville, R. G. Ransome, Brownsville, for appellee.

POPE, Justice.

This is an appeal from a judgment that denied tax exemption to the appellant hospital as a purely public charity, within the meaning of Article 8, Section 2, of the Texas Constitution, Vernon's Ann.St., and Article 7150, Section 7, of Vernon's Ann. Civ.Stats. Judgment was rendered against the hospital for unpaid taxes and also for foreclosure of a tax lien. The case was tried without a jury and the trial court made and filed findings of fact and conclusions of law.

The judgment will be affirmed. Appellants urge our consideration of certain testimony, but appellees in their brief pointedly state portions of the evidence that squarely conflict with the evidence they rely upon. A conflict in the testimony has been resolved against the appellants, and the findings of fact are well supported by enough evidence. We see no reason to prove that point by copying the conflicting evidence into this opinion.

The findings show that the Raymondville Memorial Hospital was owned and operated by Doctors Baden, Bennack and Spence prior to November, 1947. It was operated at a loss and out of a good faith desire that it not be lost to the community, the hospital was incorporated as a purely

charitable and benevolent organization, as shown by its charter and by-laws. At the time of its incorporation in 1947, the three owners conveyed the hospital to the corporation and retained a note and vendor's lien in the amount of $120,000. No interest or principal has ever been paid on the debt and no steps toward collection have ever been taken. Later a fourth doctor purchased a one-fourth interest in the notes, and those four doctors, together with a Dr. Hein, are the only doctors in the community whose patients are freely admitted to the hospital. The four doctors who owned the notes, and certain other citizens of the community, serve as trustees for the hospital, and the lay members constitute the majority of the trustees. The five doctors, named above, compose the active hospital staff and they pass upon the fitness of other doctors seeking the admission of patients to the hospital. Patients of non-staff doctors are admitted only upon association of one of the staff doctors in the case, or under circumstances by which the patient becomes the patient of the staff doctor. The medical staff actually controls the operations of the hospital and dominates its policy to such an extent that patients of non-staff doctors can not use the hospital.

The hospital has always operated to capacity, but, except for rare instances, the hospital has served only the private patients of the staff doctors. Except for a few emergency cases, all other patients are excluded or must go to hospitals in adjoining counties. The hospital has done charity work. Based on ordinary hospital rates, in 1951 alone, the hospital furnished $6,018.-50 in charity work. However, those were the private charity patients of the five staff doctors. No charity patients were received or treated, except in rare instances, from the municipalities or any organized charity. The County furnishes patients, but they are all paying patients of the staff and arrangements for payment are made in advance. The hospital operates at a loss, and by reason of its limited bed space, probably always will. The staff members receive no salary nor other direct compensation from and do not maintain offices in the hospital. From time to time the staff members donate an undetermined amount of money to cover the hospital losses.

The trial court's most significant finding, however, is that the practices of the hospital under the control of the medical staff, result in indirect personal profits and special benefits to the staff members by way of decreased expenses and increased revenues. They control a favored position in the community, since they provide exclusive hospital privileges for their patients only.

Four licensed physicians reside in Raymondville besides the hospital staff members. No facts suggest any reasonable justification for excluding at least three of them from practice or placing their patients in the hospital. None of them have made a request to become a part of the staff, however. The summation of these facts is that a large percentage of the patients in the community are excluded from the hospital by reason of the control and practices of the staff doctors.

From these findings, we conclude that the 1947 reorganization of the hospital from a private hospital to a charity hospital in actual practice resulted in no change in its operations or use. Patients of the staff exclusively were admitted prior to the incorporation, and staff patients exclusively were admitted afterwards. Both before and after the incorporation, the charity work performed was the private charity of the staff doctors. The reorganization did not result in any broadening of the charitable functions of the hospital, and afforded public charity patients no additional hospital facilities. Substantial use of the property for private profit by those in control continued. State v. Willmar Hospital, 212 Minn. 38, 2 N.W.2d 564; Dana College v. State Board of Tax Appeals, 14 N.J.Misc. 308, 184 A. 412.

The hospital is not exempt for the additional reason that it does not accomplish things wholly benevolent. City of Houston v. Scottish Rite Benevolent Association, Tex.Civ.App., 233 S.W. 551. In Santa Rosa Infirmary v. City of San Antonio, Tex.Com.App., 259 S.W. 926, 935, concern-

ing the question of private gain, the Court said, "nothing more was intended than that no private individual should reap a profit, or where a corporation was the owner that no distributable earnings in the shape of dividends must accrue." The same idea is again repeated in Benevolent & Protective Order of Elks Lodge No. 151, v. City of Houston, Tex.Civ.App., 44 S.W.2d 488, 493, as: "The word 'purely' is intended to modify the word 'charity' and not the word 'public,' so as to require the institution to have a wholly altruistic quality and exclude from it every private or selfish interest or profit or corporate gain." In that case, while commending admirable acts of charity done by the organization in question, the Court held that charity was incidental to the whole purpose of the organization. In this case, the trial court has found that the five doctors permitted to practice in the hospital receive indirect benefits in the way of decreased expenses and increased revenue by reason of their exclusion of patients other than their own and by indirection there is private gain in the hospital operation. See 51 Am.Jur., Taxation, § 638.

Appellants seek to excuse the exclusionary practices because they are consistent with accepted and standard practices of the American Medical and other associations, wherein sponsorship of patients is limited to staff members only. We recognize that a hospital may limit its facilities to certain classes of doctors to the exclusion of other classes. Hayman v. City of Galveston, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714; Harris v. Thomas, Tex.Civ.App., 217 S.W. 1068, 1078; Selden v. City of Sterling, 316 Ill. App. 455, 45 N.E.2d 329; People ex rel. Replogle v. Julia F. Burnham Hospital, 71 Ill.App. 246; Van Campen v. Olean General Hospital, 210 App.Div. 204, 205 N.Y. S. 554, affirmed, 239 N.Y. 615, 147 N.E. 219. But our concern under the tax exemption provision of the Constitution is not the availability of hospital facilities to doctors, but the availability of hospital facilities to patients. The tax exemption is bought by the disadvantages that accompany charity services to all persons equally of the same class. We conclude that the favored patients of the staff doctors are the only ones granted the hospital facilities at the Raymondville Memorial Hospital. One witness stated that during a period of four years ninety-eight per cent of the patients were the private patients of the staff doctors.

Statutory exemptions from taxation are strictly construed, and such immunity is not proved by inference or implication, but must be proved in terms too clear and plain to be mistaken. The burden to establish such an exemption is upon the institution claiming it and it must be proved in such manner that there is no doubt. Santa Rosa Infirmary v. City of San Antonio, supra. That proof does not require that a tax exempt institution must seek out its patients in the highways and byways, but, on the other hand, the claim to exemption will be closely scrutinized when large numbers of the class served are sent into the highways and byways in search of facilities.

The judgment is affirmed.