MALONE–HOGAN HOSPITAL CLINIC FOUNDATION, Inc., Appellant,

v.

The CITY OF BIG SPRING et al., Appellees.

No. 3224.

Court of Civil Appeals of Texas. Eastland.

Feb. 24, 1956.

Rehearing Denied March 23, 1956.

Piranio, Piranio & Ballowe, Dallas, James Little, Big Spring, Philip R. Overton, Austin, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, Walton S. Morrison, Harvey C. Hooser, Jr., Big Spring, for appellees.

GRISSOM, Chief Justice.

The City of Big Spring, Big Spring Independent School District, State of Texas, Howard County and Howard County Junior College sued Malone-Hogan Hospital Clinic Foundation, Inc. for taxes on the Foundation's hospital and grounds. It was stipulated that the only question to be determined was whether the Foundation was a purely public charity and, therefore, that its hospital and grounds were exempt from taxation. One issue was submitted to a jury, to-wit: "From the preponderance of the evidence do you find that the hospital of the defendant corporation, since it acquired said property, has been operated as a purely public charity, as that term has been defined to you?" The jury answered, "No". In connection with said issue the court gave the following definition: "By the term 'purely public charity' as used in this charge, is meant that it makes no gain or profit, accomplishes ends wholly benevolent, and benefits persons indefinite in numbers and personalities by preventing them, through absolute gratuity, from becoming burdens to society or to state." Judgment was rendered for the taxes and the Foundation has appealed. Its points are that the court erred in overruling appellant's motions (1) for an instructed verdict and (2) for a new trial; (3) that said issue was a question of law, or a mixed question of law and fact, and (4) that the court erred in not giving appellant's requested instructions.

Appellant contends the evidence conclusively shows that it is a purely public charity because it is undisputed that all its revenues, which were derived almost entirely from pay patients, were expended in paying doctors and nurses, paying for materials and in discharging its "lien obligations"; that it was conclusively established that the foundation used its hospital and grounds exclusively for operating its hospital and care of its patients, both for pay and charity, and that it did not permit its

premises to be rented to or used by another for his business; that it has paid no dividends; that it has no capital stock; that there has been no payment of profits, "as such", and that its hospital has been operated exclusively as a charitable institution. Appellant says that the jury based its answer on the unwarranted legal conclusion that, because of the genesis of the organization, it was not a purely public charity, notwithstanding it was conclusively shown that appellant made no profits and paid no dividends, "as such", and that, under its charter, by-laws and constitution, it is devoted to a purely charitable purpose within the meaning of Article 8, Section 2, of the Constitution of Texas, Vernon's Ann.St., and Article 7150, Section 7, R.S. of Texas, as construed by the courts of Texas. It cites Santa Rosa Infirmary v. City of San Antonio, Tex.Com.App., 259 S.W. 926; Scott v. All Saints Hospital, Tex.Civ.App., 203 S.W. 146; City of Houston v. Scottish Rite Benev. Ass'n, Tex.Civ.App., 233 S.W. 551; Republic Reciprocal Ins. Ass'n v. Colgin Hospital & Clinic, Tex.Com. App., 123 Tex. 31, 65 S.W.2d 286, and some opinions of the Attorney General.

■ Appellant recognizes that it has the burden to clearly establish the fact that as organized and operated it is a purely public charity, therefore, we shall attempt to state the facts directly testified to or that may reasonably be inferred from the evidence tending to support said jury finding. In 1950 the Foundation's hospital and grounds, with the exception of a laboratory which has been added by the Foundation, was owned by Malone & Hogan Properties, Inc., which will hereafter be referred to as Properties Inc. The stock holders of Properties Inc. were Dr. Malone, Dr. Hogan and Mr. Riley. In the hospital building owned by Properties Inc. a partnership composed of Malone, Hogan and Riley operated a hospital with the partnership renting from said corporation. Mr. Riley was the business manager. Properties Inc. and said partnership were businesses organized and operated for profit. In March, 1951, when the partners transferred their accounts and stock and Properties Inc. transferred its hospital and grounds to the Foundation, Properties Inc. owed the following unsecured debts: Mr. Riley, $6,000; Dr. Malone, $46,000; Dr. Hogan, $6,000 and a Big Spring bank about $50,000. The note of Properties Inc. to a Big Spring bank for approximately $50,000 was endorsed by Malone and Hogan. Malone, Hogan and Riley transferred their stock in Properties Inc. to the Foundation for $373,300 in notes secured by a second lien on the hospital and grounds. The Foundation also assumed payment of the outstanding debts of Properties Inc. The partnership of Malone, Hogan and Riley owned the stock in Properties Inc. and the hospital's accounts. They transferred the accounts to the Foundation under an agreement that it was to pay said partnership 25 per cent of the amount collected on accounts less than 90 days old and 10 per cent on those more than 90 days old. In the purchase of the hospital and grounds the Foundation executed notes to Malone and Hogan for $186,000 each, secured by a second lien on the hospital and grounds. These notes were payable to Malone and Hogan at the rate of $1,066 each per month. At the time of the trial the Foundation was three or four months behind in said payments. In April, 1955, the Foundation had reduced Equitable's $200,000 loan to $139,000. The Foundation obtained another loan from Equitable raising the amount of said indebtedness from $139,000 back to $200,000, which was secured by a first lien on the hospital and grounds, and out of this loan the Foundation paid off the balance of the debt to the Big Spring bank amounting to $27,900, which note was endorsed by Malone and Hogan, and paid for a laboratory added by the Foundation. Soon thereafter Riley was paid a debt of $744. When the property was transferred to the Foundation, in addition to the consideration heretofore mentioned, Doctors Malone and Hogan received a "down payment" of $1,000. In 1951 Properties Inc. paid the taxes on the hospital and grounds but the amount thereof was paid back to Malone, Hogan and Riley by the Founda-

tion and, according to the testimony of Mr. Riley, the Foundation "put it down as additional cost of property."

■■ Mr. McGibbon, who is the president of the Foundation, seems to have been the president of Properties Inc. when it transferred the hospital and grounds to the Foundation. Mr. Gound, who was secretary of Properties Inc. when it transferred the hospital and grounds to the Foundation, was a member of the original board of trustees of the Foundation and occupied that position at the time of the conveyance. Mr. Riley, who was the general manager of the partnership of Malone, Hogan and Riley that operated the hospital and rented it from Properties Inc., whose stock was owned by Malone, Hogan and Riley, became the administrator and general manager of the hospital operated by the Foundation. While the directors testified that they controlled the Foundation, it is admitted that both Doctors Malone and Hogan usually attend the meetings of its board of directors. The record is susceptible to the interpretation that there has been no controlling change in the handling of charity cases by the old partnership and the Foundation and that the percentage of accounts collected and of the charity work done has not materially changed. When the hospital was operated by the partnership of Malone, Hogan and Riley it collected approximately 90 per cent of its charges and took care of charity patients without regard to race, color or other material conditions. The record would support a conclusion that there has not been any controlling change in the manner of handling these matters by the Foundation. Since the Foundation acquired the hospital the greatest amount of charity work done in any one year was approximately 5 per cent of its total business. Howard County and other counties pay part of the accounts of their charity patients. The doctors have a written contract with the Foundation for all their services. Four of the doctors are paid $29,440 net annually and the lowest paid doctor receives $15,000 net annually. In addition to their salaries, the doctors are furnished

their offices, nurses, instruments, journals, books, telephones, and stationery. The doctors are furnished one meal a day without charge. The Foundation pays the premiums on the doctors' health and accident policies and a policy to protect them from suits for malpractice. Everything necessary in carrying on their practice is furnished or paid for by the Foundation, except automobiles. They are paid ten cents a mile · for the use of their automobiles away from the hospital on business. The written contract with each of the doctors and a resolution of the board provides that the doctors' salaries may be raised or lowered every three months. One of the directors of the Foundation at one place testified: "And when the earnings or revenue has been sufficient you have raised the salaries of the doctors, have you not? Yes, sir." Mr. Riley, the general manager of both the old and new hospital, testified: "In other words the amount of salary paid to doctors depends on the income of the hospital foundation, does it not? Yes, sir." An applicable rule is stated in Volume 2, Restatement of the Law of Trusts, page 1167, Section 376, as follows:

> "The mere fact that persons who are not objects of charity incidentally benefit from the maintenance of a charitable institution does not prevent the institution from being charitable although salaries are paid to its managers, officers and employees. If, however, the fixing of a salary is merely a device for securing the profits of the institution and not merely compensation for services rendered, the institution is not a charitable institution." Cleveland Osteopathic Hospital v. Zangerle, 153 Ohio St. 222, 91 N.E.2d 261, 264.

Doctors Malone and Hogan have the power to retake the hospital and grounds, subject to Equitable's debt, for their due and unpaid notes which are secured by a lien. There is no charge or insinuation of fraud in the record, but, from the entire record, we cannot say that a jury did not have the right to fail to find from a preponderance of the evidence that as organized and ac-

tually operated there was not a personal profit and special benefit to some of the doctors and, possibly, the manager, and therefore, that the Foundation had not discharged its burden of proving that it is a purely public charity. This was, at least, a question of fact.

■ In Benevolent & Protective Order of Elks, Lodge No. 151 v. City of Houston, Tex.Civ.App., 44 S.W.2d 488, 494, Writ Ref., it was held that the word purely was intended to modify charity, and not the word public, and required an institution claiming tax exemption to prove that it had a wholly altruistic quality and had excluded every private or selfish interest, profit or gain. It concluded that to be a purely public charity its property must be used exclusively for charitable purposes, free from mixture or combination, and unalloyed with any other purposes or objects. See Raymondville Memorial Hospital v. State, Tex.Civ.App., 253 S.W.2d 1012, RNRE; Cleveland Osteopathic Hospital v. Zangerle, 153 Ohio St. 222, 91 N.E.2d 261; Hamilton v. Corvallis General Hospital Ass'n, 146 Or. 168, 30 P.2d 9; Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 62 A.L.R. 323; Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130, 79 A.L.R. 983; City of Longview v. Markham-McRee Memorial Hospital, Tex.Com.App., 137 Tex. 178, 152 S.W.2d 1112; City of Dallas v. Cochran, Tex.Civ.App., 166 S.W. 32, and Smith v. Feather, 149 Tex. 402, 234 S.W.2d 418.

It has been held that the burden is on the tax exemption claimant to clearly establish its right thereto and that such claim cannot be sustained unless it is shown to be a purely public charity in spirit as well as within the letter of the law and that it must be judged, not only by its declared object, but also by the use actually made of the hospital. Catholic Women's Club v. City of Green Bay, 180 Wis. 102, 192 N.W. 479. "The fact, if true, * * * is immaterial, if a profit be in fact derived. The exemption is lost if profit is derived from the hospital, whether the profit be derived by the association or corporation in whom the title lies, or by others who may use its facilities for their own purposes. Such result may not be avoided by placing title in a corporation whose expressed object is to make no pecuniary profit." Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 698, 62 A.L.R. 323.

■ The legislature, under constitutional authority, has exempted from taxation all buildings and land belonging to and occupied by institutions of purely public charity that are not leased or used with a view to profit. Article 7150, Section 7. But, a hospital, though organized under the form of a purely public charity, is not exempt from taxation where its operation results, directly or indirectly, in personal profits and special benefits to the doctors or others. Raymondville Memorial Hospital v. State, Tex.Civ.App., 253 S.W.2d 1012, RNRE. In Scott v. All Saints Hospital, Tex.Civ.App., 203 S.W. 146, 148, the court said "In the Ohio case of Gerke v. Purcell [25 Ohio St. 229] it is said:

" 'Where the charity is public, the exclusion of all idea of private gain or profit is equivalent, in effect, to the force of (the word) "purely" as applied to public charity in the Constitution.'

"Since the Texas Legislature adopted our statute from the law of Ohio, it must be presumed to have adopted the construction theretofore placed upon such law by the courts of last resort of that state." In a case relied on by appellants, Santa Rosa Infirmary v. City of San Antonio, Tex. Com.App., 259 S.W. 926, 935, the court said "While it is stated in City of Houston v. Scottish Rite Benev. Ass'n [111 Tex. 191, 230 S.W. 978, 981], that, in order to maintain its status as a purely charitable institution, an organization claiming to be such, and asserting an exemption from taxation, must make no private gain or corporate profit, nothing more was intended than that no private individual should reap a profit, or where a corporation was the owner that no distributable earnings in the shape of dividends must accrue."

Two of the main doctors and the general manager of appellant constituted the part-

nership that operated the hospital before the sale to the Foundation. This partnership rented the hospital building from Properties Inc. and owned its stock. The jury might have reasonably inferred from the record that there has been no controlling change in their relationship to the actual operation of the hospital of the Foundation with reference to charity. Instead of using available income to reduce the indebtedness secured by a first lien on the hospital and grounds, the Foundation paid the unsecured debts owed by Properties Inc. to Doctors Malone and Hogan and Mr. Riley and the unsecured note to the Big Spring bank, which was endorsed by Malone and Hogan. Said doctors and some others were receiving at the time of the trial nearly $30,000 annual salary and all the equipment and help necessary to the exercise of their profession was paid for by the Foundation. They had received larger salaries. The evidence of the directors of the Foundation would support an inference or conclusion that, because of their admiration for the doctors, the effect of the provision authorizing a change in their salaries every three months was to pay to them as salaries the available income of the Foundation. There is no charge of fraud, but we cannot say that reasonable men could not draw different conclusions from the entire record, nor that the jury could not have so believed. We think the jury could reasonably have inferred that, to some extent, the Foundation was operated for the special benefit of some of the doctors and, possibly, the administrator.

Whether the foundation was a purely public charity was, at least, a question of fact. We are not called upon to determine whether it is not a purely public charity as a matter of law. "The existence of the facts and circumstances on which the right to the exemption claimed depends is ordinarily a question of fact * * *." 84 C.J.S., Taxation, § 305, p. 637. "A private hospital founded and maintained by a group of doctors for their own convenience, with or without profit, does not qualify for exemption as an institution of pure-

ly public charity." 84 C.J.S., Taxation, § 297, p. 620. "No single test is dispositive of whether a hospital is being conducted exclusively as a charitable project; all the facts in each individual case must be assembled and examined in their entirety and the substance of the scheme or plan of operation exhibited thereby will determine whether the institution involved is entitled to have its property freed from taxes." 84 C.J.S., Taxation, § 297, p. 618. The use to which an institution's property is put rather than the declaration of its purposes in its charter determines whether it is exempt. The primary test of whether property is exempt is the actual use to which it is in fact dedicated and this is ordinarily a question of fact. 84 C.J.S., Taxation, § 282, pp. 552, 553. In Dickison v. Woodmen of the World Life Ins. Soc., Tex.Civ.App., 280 S.W.2d 315, 317, it was held that the question whether a fraternal benefit society is an institution of purely public charity is essentially a question of fact. In Hamilton v. Corvallis General Hospital Ass'n, 146 Or. 168, 30 P.2d 9, it was held that whether a hospital organized for charitable purposes was in fact a charitable institution was a question of fact to be determined, in part, from the manner in which it conducted its affairs and that its charter was not conclusive. In In re Hill School, 370 Pa. 21, 87 A.2d 259, 261, it was said that "It requires no citation of authority to demonstrate that a private hospital founded and maintained by a group of doctors for their own convenience, with or without profit, would not qualify for such tax exemption." In Bistline v. Bassett, 47 Idaho 66, 272 P. 696, 62 A.L.R. 323, it was held that a hospital used for the practice and profit of doctors was not exempt from taxation under a provision for exemption substantially the same as ours.

Whether appellant is a purely public charity is the ultimate issue to be determined. City of Houston v. Scottish Rite Benev. Ass'n, 111 Tex. 191, 230 S.W. 978, 980; Frost National Bank v. Boyd, Tex. Civ.App. 188 S.W.2d 199, 207, affirmed 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326; City of Palestine v. Missouri-Pacific

Lines Hospital Ass'n, Tex.Civ.App., 99 S.W.2d 311, Writ Ref.; Powers v. First National Bank of Corsicana, Tex.Civ.App., 137 S.W.2d 839, 847.

In Texas City Transport Company v. Winters, Tex.Com.App., 222 S.W. 541, 542, it was held that " 'issues of fact' " does not mean the various controverted specific facts which constitute a plaintiff's cause of action or a defendant's ground of defense. In Hough v. Grapotte, 127 Tex. 144, 90 S.W.2d 1090, 1091, appellant contended that the issue submitted was a mixed question of law and fact. Judge Hickman said "The principal contention presented is that the court should not have submitted the issue of domicile. It is argued that domicile is not an ultimate fact, but that the real ultimate fact issues are, first, residence; and, second, intention of Galbraith to make the residence his home. The question has been many times determined contrary to this contention. Multiplicity of issues should be avoided and only those ultimate issues submitted which will form the basis of a judgment. The issues of residence and intention are merely elements of the controlling issue of domicile and were included in and disposed of by the answer to the more comprehensive issue." In City of Houston v. Lurie, 148 Tex. 391, 224 S.W.2d 871, 14 A.L.R.2d 61, 69, our Supreme Court, in an action by a city to compel a building owner to comply with an order for demolition on the ground that a building was a fire hazard, held that the ultimate issue was whether the building was a fire hazard, not how the building was constructed, what were the living conditions, and the like. See also Scott v. Gardner, Tex.Com.App., 137 Tex. 628, 156 S.W.2d 513, 518, 141 A.L.R. 50 and Christie v. Tipps, Tex.Civ.App., 279 S.W.2d 142, 144.

Many of appellant's objections to the charge were in reality requests for additional instruction that appellant thought would be beneficial to it. To illustrate, in the third paragraph of its objections appellant complained that the court failed to inform the jury that the Foundation had the right to make a profit provided it was not paid to some individual, "as such", and its objection in paragraph five was that the jury was not told that payment by the Foundation of salaries to its doctors and nurses and payment on its debts out of the money derived from pay patients did not render appellant an institution for profit, and the like. These were in effect nothing more than requests for additional instructions, rather than objections to the court's issue and definition and, since appellant did not tender substantially correct instructions, it cannot complain thereof on appeal. Texas Rules of Civil Procedure, rule 279; Great American Indemnity Company v. Sams, 142 Tex. 121, 176 S.W.2d 312, 314; Harrison v. Southwest Coaches, Tex.Civ.App., 207 S.W.2d 159, RNRE; Beauchamp v. Beauchamp, Tex.Civ.App., 239 S.W.2d 191, 194, RNRE. The objection suggested in appellant's brief that the jury was not permitted to pass upon the specific question whether the hospital was operated for the profit of an individual, was not presented to the trial court. Appellant certainly did not distinctly point same out and state the grounds of its objection, as required by R.C.P. 274. See Associated Indemnity Corporation v. Kujawa, 153 Tex. 314, 268 S.W.2d 122. Some of appellant's requested instructions were comments on the weight of the evidence and some others were immaterial and concerned questions not in dispute.

We have considered appellant's contention that the jury's finding is directly contrary to the testimony of all the witnesses and, therefore, unauthorized. It is true that appellees placed no witness on the stand. But appellant had the onerous burden of clearly establishing that as organized and actually operated it was a purely public charity. If reasonable minds could differ as to the proper conclusion to be drawn from the evidence and could conclude as the jury did then a question of fact was raised and the jury's finding is conclusive.

We think reversible error is not shown. The judgment is affirmed.