**HILLTOP VILLAGE, INC., Appellant,**

v.

**KERRVILLE INDEPENDENT SCHOOL DISTRICT, Appellee.**

No. 15090.

Court of Civil Appeals of Texas, San Antonio.

Nov. 1, 1972.

Rehearing Denied Nov. 29, 1972.

W. Glendon Roberts, Bandera, Joseph F. Leonard, Jr., Kerrville, for appellant.

Lavern D. Harris, Kerrville, for appellee.

BARROW, Chief Justice.

Hilltop Village, Inc., a nonprofit corporation engaged in providing a home for older adults, brought this suit for a declaratory judgment that its property was exempt from ad valorem taxation for the years 1969, 1970, and 1971, as an institution of purely public charity. The trial court denied all relief after a nonjury trial, and this appeal has been dully perfected. There are no findings of fact or conclusions of law.

In a prior case involving this same corporation, the Supreme Court held ". . . that the activity of providing facilities to meet the special residential requirements of the aged may qualify an institution for tax exemption as one of purely public charity under circumstances where, in the words of Article 7150, aid is dispensed to those in sickness or distress 'without regard to poverty or riches of the recipient' and 'the funds, property and assets of such institution are placed and bound by its laws to relieve, aid and administer' to the relief of those in want, sickness and distress." Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d 943, 949 (Tex.1968). The exemption was there denied because Hilltop Village was not, in fact, accepting residents without regard to their financial circumstances; nor was it bound to assume charitable obligations or to engage in dispensing relief to those in need.

Shortly after the ruling by the Supreme Court denying said exemption, the Board of Directors on April 25, 1968, amended the Articles of Incorporation whereby the properties and assets of the corporation were pledged in perpetuity to the purpose for which the corporation was formed, to-wit: ". . . to the relief of persons in financial need and to their assistance

in obtaining the care they must have to prevent their becoming a burden on society." At the same time Article V, Section 2, of the by-laws was amended to provide:

"Residents who are financially able to pay for the cost of their care shall be expected to do so on a basis determined by the Board of Directors. THE FACT THAT A RESIDENT OR APPLICANT FOR RESIDENCY SHALL BE UNABLE TO PAY ALL OR EVEN A PORTION OF THE COST OF HIS CARE SHALL NOT PREVENT HIS BEING A RESIDENT. It shall be the duty of the Board of Directors to so administer the home as to do as much charitable assistance as possible, consistent with good sound management of the Home, and such charitable assistance shall be directed to the applicant as determined by the Board of Directors." (amended part in caps)

Article V of the by-laws was amended again by the Board of Directors on January 28, 1971, and now reads:[1]

"Section 1. All services and accommodations of the facility are available to any one of either sex without regard to poverty or riches of the recipient, and without regard to race, color, creed or national origin. No person shall be denied admission to the Home by reason of his or her poverty or inability to pay all or even a part of the cost of his or her care, and the aid and services furnished by this Home shall be dispensed to the residents without regard to poverty or riches of the recipient.

"Section 2. As stated in the Charter, the properties and assets of this Corporation are pledged in perpetuity to the relief of persons in financial need and to their assistance in obtaining the care they must have to prevent their becoming a burden on society. This re-statement of such pledge re-affirms the pledge and policy of this Corporation which has existed since the Corporation was formed, all other policies or provisions in these By-Laws notwithstanding."

The facts in this record were developed by witnesses rather than through stipulation as in the first case. Nevertheless, the evidence is largely uncontradicted and somewhat similar to that in the first record. Hilltop Village is located on a 7.2 acre tract[2] in the Kerrville Independent School District; and the home contains 96 living accommodations which are divided into four wings, one wing for nursing patients, and three for residential occupants. There are accommodations for 150 residents, with an average occupancy of about 140 persons. Residents are admitted by the administrator, under direction of the Board of Directors, upon an application for membership. Included in said application is a financial statement. Although the rooms are still leased for a stated rental, as shown in the first appeal, a resident is admitted for a lesser rental where unable to pay the full amount. As a minimum, such resident is charged on the basis of the old-age assistance payments received by such resident from the state. The administrator testified that no applicant has been turned down during the period in controversy for lack of funds, but that no one has been admitted exclusively on charity.

The corporation's charitable assistance is demonstrated in the following manner: the total cost of operation, including mortgage payments, supplies and labor, is computed for each month and divided by the total amount of square footage for rental, to determine the cost per square foot.

1. This amendment would be effective at most to only a pro rata part of the 1971 tax. See Article 7151, Vernon's Tex. Rev.Civ.Stat.Ann.

2. Hilltop Village owns a contiguous 7.9 acres which is being subdivided and sold as lots. It is not a part of the retirement home, and Hilltop Village is paying ad valorem taxes on this tract.

Where less than this amount is paid by a resident, he is deemed to be receiving charitable assistance. Any deficit is supplied by gifts and contributions. Under this system, an average of nearly 50% of the residents are shown to have received an average of 28.24% charitable assistance over the 27-month period from January, 1969, through March, 1971. It is conceivable that under this system, residents paying the full agreed rental might, nevertheless, receive charitable assistance if the expenses for a particular month should be unusually high.

It is clear that despite the broad language in the by-laws, as amended on January 28, 1971, the manner of operation is essentially the same as presented in the first case. In fact, the by-laws so state. It is true that the exhibit prepared by the administrator demonstrates a higher percentage of charitable assistance than was shown in the first case; however, this could be the result of the different method of computing same, and particularly the effect of inflation on this method. It remains the duty of the administrator, acting on behalf of the Board of Directors, to so administer the home as to provide as much charitable assistance as possible *consistent with good sound management of the home.*

The very laudable purpose to be accomplished by this home is the same as that of Stillwell Residence, which was held as a matter of law in City of Waco v. Texas Retired Teacher Residence Corporation, 464 S.W.2d 346 (Tex.1971), not to be operated as an institution of purely public charity. Here, as in Stillwell Residence, no person was accepted during the years in question without regard to poverty or riches; and no one was accepted in the residence without a fee determined by the administrator, based upon the applicant's ability to pay; and, as a minimum, each resident was required to contribute on the basis of the old-age assistance payments received from the state.

There is evidence in the record to support the implied finding of the trial court that Hilltop Village was not, in fact, accepting residents without regard to their financial circumstances. Therefore, the trial court did not err in concluding that Hilltop Village was not an institution of purely public charity so as to be entitled to an exemption from ad valorem taxation.

The judgment is affirmed.