

# The Attorney General of Texas

November 4, 1977

**JOHN L. HILL**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4814 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity
Affirmative Action Employer

Honorable Charles R. Holcomb
County Attorney
Cherokee County Courthouse
Rusk, Texas

Opinion No. H- 1085

Re: Whether a foundation
which owns a clinic and
leases it to a physicians'
association is exempt from
ad valorem taxes.

Dear Mr. Holcomb:

You have requested our opinion concerning the exemption
from ad valorem taxation of the property of the Travis Clinic
Foundation. You have informed us that the Foundation is a
nonprofit corporation which owns the Travis Clinic. The Foun-
dation leases the Clinic to the Travis Clinic Association;
the Association pays rentals sufficient to pay the indebted-
ness of the Foundation as well as any revenues remaining
after payment of operating expenses. The doctors see no
private patients; their salaries are set by the Association
subject to the approval of the Foundation.

Sections 7 and 28 of article 7150, V.T.C.S., provide for
exemption of property of purely public charities. In order to
qualify for an exemption, property must satisfy both the re-
quirements of the statute and the more restrictive require-
ments of article 8, section 2 of the Texas Constitution.
City of McAllen v. Evangelical Lutheran Good Samaritan Society,
530 S.W.2d 806 (Tex. 1975); City of Houston v. Scottish Rite
Benevolent Association, 230 S.W. 978 (Tex. 1921).

The threshold requirement for an exemption is that the
property must be owned by a "purely public charity," an or-
ganization which satisfies the following criteria:

> First, it [makes] no gain or profit,
> second, it [accomplishes] ends wholly
> benevolent; and, third, it [benefits]
> persons, indefinite in numbers and in
> personalities, by preventing them,
> through absolute gratuity, from be-
> coming burdens to society and to the
> state.



City of McAllen v. Evangelical Lutheran Good Samaritan Society, supra, at 808-09. Whether an organization satisfies these criteria is a question of fact. City of McAllen, supra; Malone-Hogan Hospital Clinic Foundation v. City of Big Spring, 288 S.W.2d 550 (Tex. Civ. App. -- Eastland 1956, writ ref'd n.r.e.). One of the relevant facts is the organization's actual practice regarding the admission of charity patients. While we have been furnished with a declaration of policy of the Foundation and Association which would indicate that patients are accepted without regard to their ability to pay, a mere declaration will not suffice; the question is whether the admission policy is in fact so administered. City of McAllen, supra; Hilltop Village, Inc. v. Kerrville Independent School District, 487 S.W.2d 167 (Tex. Civ. App. -- San Antonio 1972, writ ref'd n.r.e.); see River Oaks Garden Club v. City of Houston, 370 S.W.2d 851 (Tex. 1963). In order to reach the legal issue raised by the facts presented, we will assume that the Clinic admits patients regardless of their ability to pay and that the Foundation qualifies as a purely public charity.

The most serious question concerning the availability of the exemption arises from the lease of the property to the Association. Some courts have apparently believed that the use of property by anyone other than the charitable owner would prevent an exemption. See Attorney General Opinion H-342 (1974). In Attorney General Opinion H-342 (1974) we predicted

> that our Texas Supreme Court would, at least hold that if a normal landlord-tenant relationship is not present, and no rent is charged, that the use of a portion of a charitable hospital by a charitable blood bank will not cause the hospital to lose its tax exempt status.

Id. at 6. Subsequently, the Supreme Court stated:

> It has often been held that a charitable institution is entitled to exemption of only that property which is used by the institution exclusively for purely public charity. By this it is meant that if the institution rents the premises to someone who does not qualify for the charitable exemption, though the revenue is used entirely by the institution in its work of pure charity, the premises are not exempt from taxation. Morris v. Masons, 68 Tex.

> 698, 703, 5 S.W. 519 (1887). Further, the
> owner may not permit its property to be
> used by organizations which exist for
> purposes which are not charitable. City
> of Houston v. Scottish Rite Benevolent
> Association, supra. It does not follow
> that every use of the property must be
> gratuitous. There may be hospital patients,
> for example, who fully compensate the in-
> stitution for all services received, but
> the character of the institution and the
> charitable nature of the use of the prop-
> erty is not nullified. Santa Rosa Infirmary
> v. City of San Antonio, 259 S.W. 926 (Tex.
> Comm'n App. 1924 jdgmt adopted).

City of McAllen, supra at 810 (Emphasis added). The clear
implication of the underlined portion is that a charitable
organization may "rent" the exempt property to "someone who
does . . . qualify for the charitable exemption." In our view
this authorization constitutes a rational exception to the
doctrine expressed in the older cases that the creation of a
landlord-tenant relationship would void an exemption. Of
course we are aware that the relationship of the Foundation
and the Clinic is not merely that of landlord-tenant, but in
any event the issue is whether the Travis Clinic Association
would qualify for the exemption, that is, whether the Associa-
tion is a purely public charity.

As noted above, this is a question of fact. For the
Association to constitute a purely public charity, its operations
must give rise to no personal profit or private benefit. City
of McAllen, supra; City of Longview v. Markham-McRee Memorial
Hospital, 152 S.W.2d 1112 (Tex. 1941); Malone-Hogan Hospital
Clinic Foundation, supra; Raymondville Memorial Hospital v.
State, 253 S.W.2d 1012 (Tex. Civ. App. -- San Antonio 1952, writ
ref'd n.r.e.). You have informed us that all revenues of the
Association remaining after the payment of operating expenses
are transferred to the Foundation; therefore, the Association
itself does not show a profit. However, the cases indicate that
an exemption may be lost due to private gain on the part of
individual doctors. In this regard you have informed us that
the doctors who work at the clinic have no private patients and
are compensated only by salary from the Association, which salary
is not dependent upon the number of patients treated. Thus,
the operation of the Travis Clinic is apparently distinguishable
from that of the hospitals in City of Longview and Raymondville
Memorial Hospital where the exemptions were denied because the
staff doctors obtained a private benefit through the admission
of private paying patients.

In *Malone-Hogan Hospital Clinic Foundation v. City of Big Spring,* *supra,* an exemption was denied because

> the amount of salary paid to doctors depend[ed] on the income of the hospital. . . . An applicable rule is stated in Volume 2, Restatement of the Law of Trusts, page 1167, Section 376, as follows:
>
> > 'The mere fact that persons who are not objects of charity incidentally benefit from the maintenance of a charitable institution does not prevent the institution from being charitable although salaries are paid to its managers, officers and employees. If, however, the fixing of a salary is merely a device for securing the profits of the institution and not merely compensation for services rendered, the institution is not a charitable institution.' Cleveland Osteopathic Hospital v. Zangerle, 153 Ohio St. 222, 91 N.E.2d 261, 264.

*Id.* at 553. Of course the nature of the salaries of the doctors (members of the Travis Clinic Association) on the Clinic staff is a question of fact which we cannot resolve.

If the facts establish that the Travis Clinic Foundation and the Travis Clinic Association operate as purely public charities, then the property would be exempt from taxation notwithstanding its lease from the Foundation to the Association. We do not determine whether the Association and Foundation are in fact purely public charities.

### S U M M A R Y

> If the Travis Clinic Foundation and the Travis Clinic Association operate as purely public charities, a question we cannot here determine, then property belonging to the Foundation which is so operated would be exempt from taxation notwithstanding the lease of such property to the Association.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jst